STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THOMAS LEFURGE, DEFENDANT-RESPONDENT.

Argued September 24, 1985—Decided January 9, 1986.

*William C. Whitehouse,* Assistant Prosecutor, argued the cause for appellant (*Harold J. Ruvoldt, Jr.,* Hudson County Prosecutor, attorney).

*Peter B. Meadow,* Assistant Deputy Public Defender, argued the cause for respondent (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

The critical issue in this case is the constitutionality of *N.J.S.A.* 2C:1–8(d)(2), which provides that a defendant may be convicted of a conspiracy to commit a substantive offense even though the crime of conspiracy was not charged in the indictment.[1] Defendant was indicted for theft. Pursuant to *N.J.S.A.* 2C:1–8(d)(2), the trial court instructed the jury to consider, as an included offense, the defendant's guilt of the crime of conspiracy to commit theft. Defendant was acquitted of theft and convicted of conspiracy. Following the conviction, on defendant's motion, the trial court arrested the judgment of conviction and dismissed the conspiracy charge. The court reasoned that the conviction could not stand because no overt act in furtherance of the conspiracy had been alleged in the indictment. The Appellate Division affirmed in an unreported opinion. We granted certification. 101 *N.J.* 237 (1985). We now reverse and reinstate the conspiracy conviction.

## I

Defendant was charged in a two-count indictment. The first count charged defendant, Reynaldo Gonzalez, and William Montgomery with unlawfully taking movable property having a value in excess of $500 from Supermarkets General Corporation. (*N.J.S.A.* 2C:20–3). The second count charged defendant

---

[1] *N.J.S.A.* 2C:1–8(d) provides as follows:

A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:

(1) It is established by proof of the same or less than all of the facts required to establish the commission of the offense charged; or

(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

and Montgomery with the theft from Supermarkets General Corporation of property having a value in excess of $500 by failing to make the legally-required disposition of such property. (*N.J.S.A.* 2C:20–9). Both counts alleged that the property taken was 5192 cases of canned tuna stored by Supermarkets General Corporation at a warehouse owned by Port Jersey Distribution Services, and that the thefts occurred on various dates between January 22 and April 12, 1981.

The State's principal witness before the grand jury and at trial was defendant Montgomery.[2] Montgomery testified that he had been solicited by LeFurge, a co-employee at Port Jersey Distribution Services, to participate in a scheme to steal property from their employer's warehouse. Montgomery's role in the enterprise was to sign fraudulent gate passes so that trucks containing stolen property could avoid detection by the guards at the warehouse gate. Montgomery identified Gonzalez as the driver whose gate pass he had signed on two of the seven occasions on which property had been removed from the warehouse. Montgomery testified that he was paid $2500 in cash by LeFurge for his complicity in the thefts.[3]

At the close of the State's case the trial court dismissed the second count of the indictment, concluding that the evidence was not sufficient to establish that defendant LeFurge had received possession of the stolen property pursuant to a legal obligation to return it to its owner. Before the defense case

---

[2]In exchange for Montgomery's grand-jury and trial testimony, the prosecutor agreed not to contest Montgomery's participation in the Hudson County Pretrial Intervention Program. *R.* 3:28. All charges against Montgomery were dismissed prior to trial.

[3]During discovery defendants were furnished with documents that disclosed the basic elements of the State's case. The documents included Montgomery's statement to the Jersey City police, his grand-jury testimony, records of inventories conducted at Port Jersey Distribution Center, dates of the alleged thefts, and a list of witnesses.

commenced,[4] the trial court announced its intention to charge the jury with the crime of conspiracy to commit theft pursuant to *N.J.S.A.* 2C:1–8(d)(2).

During its charge, the trial court instructed the jury concerning the crime of conspiracy to commit theft. The court cautioned the jury not to consider the statements or conduct of Montgomery as evidence against Gonzalez or LeFurge unless it found that the State had proven by independent evidence the existence of a conspiracy to commit the crime charged in the indictment. The court also instructed the jury that it could not convict for conspiracy unless the State had proven beyond a reasonable doubt that at least one of the co-conspirators had committed an overt act to effectuate the objectives of the conspiracy.

The jury returned a verdict acquitting defendant LeFurge of the theft charge, but convicting him of conspiracy to commit theft. Gonzalez was acquitted of both charges. Counsel for LeFurge moved to set aside the verdict, requesting an arrest of judgment and a judgment of acquittal or, in the alternative, an order vacating the judgment of conviction and granting a new trial. After hearing argument on the motion, the trial court entered an order arresting the judgment and dismissing the conspiracy charge, *R.* 3:21–9, on the ground that no overt act in furtherance of the conspiracy had been alleged in the indictment. The Appellate Division affirmed on the basis of the trial court's opinion.

II

■ The trial court's decision to arrest the judgment of defendant's conspiracy conviction was consistent with the case law prior to the enactment of the New Jersey Code of Criminal Justice (Code). Although convictions of conspiracy to commit a

---

[4]Defendant LeFurge testified and denied participation in any scheme to steal property from the Port Jersey warehouse. Defendant Gonzalez did not testify.

common-law crime did not require proof of an overt act, proof of an overt act was essential with respect to conspiracies to commit all but the most serious statutory crimes. *State v. Cormier*, 46 *N.J.* 494, 508 (1966); *N.J.S.A.* 2A:98–2.[5] Accordingly, the pre-Code decisions relied upon by the trial court, *State v. Newell*, 152 *N.J.Super.* 460, 466 (App.Div.1977), and *State v. Malaspina*, 120 *N.J.Super.* 26, 29 (App.Div.1972), required that the overt act, as an essential element of the crime of conspiracy, be alleged specifically in the indictment. The justification for the requirement that an overt act be proved is that it "assures that a credible threat of an actual crime exists, and also guards against the unwarranted indictment of innocent persons under the conspiracy rubric." Note, "Conspiracy: Statutory Reform Since the Model Penal Code," 75 *Colum.L. Rev.* 1122, 1155 (1975); *see also Yates v. United States*, 354 *U.S.* 298, 334, 77 *S.Ct.* 1064, 1084, 1 *L.Ed.*2d 1356, 1384 (1957) (the function of an overt act in a conspiracy prosecution is to manifest that the conspiracy is no longer resting solely in the minds of the conspirators or fully completed and no longer in existence).

The drafters of the American Law Institute's Model Penal Code adopted the rule that both allegation and proof of an overt act are necessary except for conspiracies to commit first- and second-degree crimes. *Model Penal Code* § 5.03(5) (Official Draft and Revised Comments, 1985) (hereafter cited as *MPC*). The Model Penal Code requires an overt act in the view

> that it affords at least a minimal added assurance, beyond the bare agreement, that a socially dangerous combination exists—added assurance that we believe may be dispensed with where the agreed-upon crime is grave enough to be classified as a felony of the first or second degree and the importance of preventive intervention is *pro tanto* greater than in dealing with less serious offenses. [*MPC* (Tent. Draft No. 10, 1960) at 141 (footnote omitted).]

In two significant respects the drafters of our Code did not track the Model Penal Code's treatment of conspiracy. Although our Code followed the Model Penal Code's requirement

---

[5]Repealed by *L.*1978, *c.* 95, § 2C:98–2, eff. Sept. 1, 1979.

of proof of an overt act for conspiracies to commit crimes other than those of the first or second degree, it did not adopt the requirement that the overt act be alleged in the indictment. *N.J.S.A.* 2C:5–2(d).[6] The omission was specifically noted by the Code's drafters: "The Code follows a similar scheme by excepting from the overt act requirement all crimes of the first and second degree. The MPC requires both 'allegation' and 'proof' of an overt act. We require only the latter leaving the pleading issue to the Rules." *Final Report of the New Jersey Law Revision Commission,* Vol. II: *Commentary* (1971), § 2C:5–2 at 141 (hereafter cited as *Code Commentary* ).[7]

In addition, our Code differs from the Model Penal Code in that it specifically designates conspiracy to commit the offense charged in the indictment as an "included offense" for which a defendant may be convicted, even though conspiracy is not charged in the indictment. *N.J.S.A.* 2C:1–8(d)(2). The Model

---

[6]Also excluded from the requirement of proof of overt acts are conspiracies to distribute or possess "with intent to distribute a controlled dangerous substance as defined under the 'New Jersey Controlled Dangerous Substances Act,' P.L.1970, c. 226 (C. 24:21–1 et seq.) * * *." *N.J.S.A.* 2C:5–2(d).

[7]The *Code Commentary* notes that the significance of the overt-act requirement has been the subject of much debate:

> The precise significance of the overt act requirement and whether it consistutes an element of the offense of conspiracy has been the subject of some dispute. At times it has been viewed merely as a way of affording a basis for venue, jurisdiction and the application of the statute of limitations. At other times, it is viewed as an element of the offense. [*Code Commentary* § 2C:5–2 at 141–42.]

The *Code Commentary* reference to the Rules of Court for a resolution of the pleading issue leaves open the question whether an overt act must be alleged because it is one "of the essential facts" constituting the offense charged. *R.* 3:7–3. For a discussion of the fundamental difference between the two conflicting views, see *Hyde v. United States,* 225 *U.S.* 347, 32 *S.Ct.* 793, 56 *L.Ed.* 1114 (1912), and Wechsler, Jones and Korn, "The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation and Conspiracy," 61 *Colum.L.Rev.* 957, 1002–1006 (1961). *See also* Note, "Criminal Conspiracy: Bearing of Overt Acts Upon the Nature of the Crime," 37 *Harv.L.Rev.* 1121 (1924) (arguing that an overt act is not an element of the crime of conspiracy).

Penal Code designates "attempts" and "solicitations" to commit the offense charged as included offenses, but does not so designate conspiracies. *MPC* § 1.07(4)(b).

■■ In view of the Code's designation of conspiracy as an offense for which a defendant may be convicted without it being charged in the indictment, the trial court's reliance on pre-Code cases that require allegation of an overt act was misplaced. The legislative intent, as expressed in *N.J.S.A.* 2C:1–8(d)(2), is to permit a jury to convict for conspiracy as an included offense even though the grand jury did not allege the existence of a conspiracy in its indictment. It would be anomalous to dispense with the requirement of indictment of the crime of conspiracy but insist on the allegation of an element of the crime. Accordingly, we construe the Code not to require either an overt act or the conspiracy itself to be alleged in the indictment.

### III

Although the trial court expressly declined to consider the constitutionality of *N.J.S.A.* 2C:1–8(d)(2), defendant contends that section of the Code to be unconstitutional if it is construed to allow a conspiracy conviction where neither the conspiracy nor any overt act is charged in the indictment. Defendant argues that the statute, so construed, impermissibly supplements the indictment by exposing a defendant to conviction for a crime not charged by the indictment, in violation of Article I, paragraphs 8 and 10 of the New Jersey Constitution, which provide, in part:

No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury * * *. [*N.J. Const.* of 1947, art. I, para. 8.]

In all criminal prosecutions the accused shall have the right * * * to be informed of the nature and cause of the accusation * * *. [*N.J. Const.* of 1947, art. I, para. 10.]

■ These constitutional protections are the sources of the standards that we have established to determine the sufficiency

of criminal indictments.[8] These standards are well settled. First, an indictment must "inform the defendant of the offense charged against him, so that he may adequately prepare his defense * * *." *State v. Lefante,* 12 *N.J.* 505, 509 (1953); *see State v. Wein,* 80 *N.J.* 491, 497 (1979); *State v. LaFera,* 35 *N.J.* 75, 81 (1961); *State v. Bruneel,* 14 *N.J.* 53, 60 (1953). Second, the indictment must be sufficiently specific to enable the defendant to avoid a subsequent prosecution for the same offense. *State v. Wein, supra,* 80 *N.J.* at 497; *State v. LaFera, supra,* 35 *N.J.* at 81; *State v. Lefante, supra,* 12 *N.J.* at 509. Finally, the indictment must be sufficiently specific "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." *State v. Boratto,* 80 *N.J.* 506, 519 (1979); *State v. Wein, supra,* 80 *N.J.* at 497; *State v. LaFera, supra,* 35 *N.J.* at 81.

■■ In resolving defendant's challenge to the constitutionality of *N.J.S.A.* 2C:1–8(d)(2), we apply these standards to determine whether this statutory provision, as applied in conjunction with the indictment in this case, comports with the criteria that the indictment, if standing alone, would be required to meet. *See State v. Talley,* 94 *N.J.* 385, 393 (1983). We have no doubt that defendant had adequate notice to permit him to defend against a charge of conspiracy to commit theft. On its face, *N.J.S.A.* 2C:1–8(d)(2) constitutes express notice to defendant that he may be charged with conspiracy as an included offense. In this respect, the statute serves the same purpose as the indictment. Consistent with notions of due

---

[8] The United States Constitution does not impose on the States the requirement of indictment by grand jury, *Paterno v. Lyons,* 334 *U.S.* 314, 322, 68 *S.Ct.* 1044, 1048, 92 *L.Ed.* 1409, 1416 (1947) (Frankfurter, J., concurring). The Sixth Amendment of the United States Constitution guarantees the right "to be informed of the nature and cause of the accusation" using virtually the same words as the New Jersey Constitution (Art. I, para. 10), and the due process clause of the fifth amendment has been held to require "reasonable notice and information of the specific charge" against a defendant. *Id.* at 320, 68 *S.Ct.* at 1047, 92 *L.Ed.* at 1415.

process and fairness, the statute provides adequate notice to all defendants that they may be required to defend against the charge of conspiracy to commit the substantive offenses for which they have been indicted.

Although the indictment did not allege that a conspiracy existed, the accusation that the three defendants unlawfully took over 5000 cases of canned tuna from the Port Jersey warehouse compels the conclusion that the grand jury conclud-ed the defendants acted in concert. Moreover, the information acquired by defendant during discovery, including defendant Montgomery's statement to the Jersey City police and his grand-jury testimony, disclosed that the theory of the State's case was that the three defendants had acted together in the theft of the merchandise.[9] Finally, the trial court, at the close of the State's case, informed defendant of its intention to charge conspiracy as an included offense. Under the circumstances of this case, it is difficult to conceive that defendant was in any way surprised or prejudiced by the trial court's charge of

---

[9]The following excerpt from Montgomery's statement accurately conveys the thrust of his testimony before the grand jury and at trial:

In February 1981 I was approached by Thomas LeFurge outside of the shipping office. He asked me how I was set for money, and if I needed any extra cash. * * * A couple days later Thomas LeFurge approached me again outside the shipping office, and asked me for my phone number, which I gave him. Then he called me later that night. And he told me if I wanted to make extra money and he had a way to get freight out of the warehouse. Then he told me that all I had to do was sign out the truck's gate pass the way it came in, and I told him I did not think it could be done. * * * That morning when he approached me he told me not to worry because he had done it before. * * * A few days later in the morning he told me that he had a truck to come in and a tall Spanish guy would come in using the name Pioneer foods, and just sign his pass out. Later that morning he came in and I signed the pass out, and the pass said part loaded and I signed it the same way. * * * The following morning Thomas LeFurge motioned to me to go to the bathroom and he gave me $500.00 in tens and twenties. About three days to a week later Thomas LeFurge told me that the same man would be in this morning. And he came in and the same procedure was followed. Then the next morning he called me in the bathroom again and gave me $500.00 in tens and twenties.

conspiracy to commit theft as an included offense. *See Paterno v. Lyons*, 334 *U.S.* 314, 321, 68 *S.Ct.* 1044, 1047, 92 *L.Ed.* 1409, 1415 (1947) (indictment for receiving stolen property constitutes sufficient notice that defendant was charged with substantial elements of crime of larceny in order to support guilty plea to attempted larceny).[10]

We next consider whether the indictment, as supplemented by *N.J.S.A.* 2C:1–8(d)(2), satisfies the requirement of sufficient specificity to enable defendant to defeat a subsequent prosecution for the offenses with which he was charged. Defendant does not dispute that there is a bar to subsequent prosecutions for the crimes alleged in the indictment. Rather, he argues that under certain circumstances a defendant, exposed by the statute to a conspiracy charge that the trial court declines to give, could subsequently be indicted and tried for conspiracy. We find no merit in this contention. If defendant had been acquitted of the conspiracy charge, the Code prohibits an attempted retrial even though conspiracy was not alleged in the indictment. *N.J.S.A.* 2C:1–9(a). If the trial court had declined to charge conspiracy, either as a matter of discretion or because there was no rational basis for a conspiracy conviction, *N.J.S.A.* 2C:1–8(e),[11] a retrial of defendant for conspiracy would be barred by the Code. *N.J.S.A.* 2C:1–10(a)(1), (2); *N.J. S.A.* 2C:1–8(b). The compulsory-joinder provision of our Code,

---

[10]Prejudice to the defendant is one of the standards used to test the propriety of amendments to the indictment at trial "to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his defense on the merits." *R.* 3:7–4. *See* Pressler, *Current New Jersey Court Rules,* Comment *R.* 3:7–4; *State v. Stefanelli,* 78 *N.J.* 418, 429 (1979); *State v. Bott,* 53 *N.J.* 391, 402–03 (1969); *State v. Connolly,* 120 *N.J.Super.* 511, 516 (App.Div.1972); *State v. Kuske,* 109 *N.J.Super.* 575, 583–86 (App.Div.1970).

[11]*N.J.S.A.* 2C:1–8(e) reads: "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."

which is based on § 1.07(2) of the Model Penal Code, appears to impose greater restrictions on multiple prosecutions than are afforded by the United States Supreme Court's interpretation of the double-jeopardy clause of the fifth amendment. *MPC* § 1.07 comment at 121 (comparing the joinder requirement imposed upon the States by the double-jeopardy clause of the fifth amendment as interpreted in *Ashe v. Swenson*, 397 *U.S.* 436, 90 *S.Ct.* 1189, 25 *L.Ed.*2d 469 (1970), with the compulsory-joinder requirements of the Model Penal Code); *see also State v. Gregory*, 66 *N.J.* 510, 522 (1975) (compulsory-joinder standards of Model Penal Code require reversal of defendant's conviction for possession of heroin with intent to distribute where that charge not joined with earlier prosecution for distribution). We reject the contention that the indictment in this case, supplemented by *N.J.S.A.* 2C:1–8(d)(2), exposes defendant to multiple prosecutions for either the offenses charged in the indictment or conspiracy to commit such offenses.

■ Finally, we consider defendant's contention that the effect of *N.J.S.A.* 2C:1–8(d)(2) is to expose defendant to trial and conviction for an offense not considered by the grand jury. The ancient function of the grand jury in the Anglo-American system of justice has traditionally been to sort accusations of criminal conduct, to advance the public interest through the discovery and indictment of persons chargeable with certain crimes, and to safeguard citizens against arbitrary, oppressive, and unwarranted criminal accusations. *United States v. Calandra*, 414 *U.S.* 338, 342–43, 94 *S.Ct.* 613, 617, 38 *L.Ed.*2d 561, 568 (1974). One vehicle through which the grand jury operates is the indictment. In order to preserve the grand-jury function and protect the constitutional guarantee to indictment by a grand jury, this Court has insisted that "the indictment must allege all the essential facts of the crime, lest an accused be brought to trial for an offense the grand jury did not find." *State v. LaFera, supra,* 35 *N.J.* at 81; *State v. Boratto, supra,* 80 *N.J.* at 519; *State v. Wein, supra,* 80 *N.J.* at 497.

 Nevertheless, an indictment is merely a pleading device and never an end in itself. *State v. LaFera, supra,* 35 *N.J.* at 81. Consequently, the principles that an indictment must fairly apprise a defendant of the charges against him and prevent the possibility of multiple prosecution for the same offense are sufficiently flexible to accommodate the common-law doctrine that a defendant may be found guilty of a lesser offense included in the offense charged in the indictment. *State v. Saulnier,* 63 *N.J.* 199, 205 (1973); *State v. Zelichowski,* 52 *N.J.* 377, 383–84 (1968); *State v. Midgeley,* 15 *N.J.* 574, 579–80 (1954). This common-law doctrine was

originally designed to aid the prosecution so that it would not fail entirely where some element of the greater offense was not established. See *The People v. White,* 22 *Wend* 167, 176 (1839); *The People v. Jackson,* 3 *Hill* 92 (1842). But it also redounded to the benefit of the defense since it enabled a finding of lesser consequence (*cf. People v. Mussenden,* 308 *N.Y.* 558, 127 *N.E.* 2d 551, 553 (1955)) and precluded a later independent prosecution of the lesser offense as double jeopardy. See *State v. Midgeley, supra,* 15 *N.J.* at 579–580; *State v. Di Giosia,* 3 *N.J.* 413, 419 (1950). Any additional procedural inconvenience it entailed in the trial itself was outweighed by the resulting higher measure of justice and the increased efficiency in judicial administration. [*State v. Saulnier, supra,* 63 *N.J.* at 205.]

Section 1.07 of the Model Penal Code encompasses the common-law doctrine of included offenses by providing that a defendant may be convicted of an offense included in an offense charged in the indictment, specifying that an offense is to be viewed as included when:

(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) it consists of an attempt or solicitation to commit the offense or to commit an offense otherwise included therein; or

(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest of a lesser kind of culpability suffices to establish its commission.

With minor variations, the proposed New Jersey Penal Code followed the "included offense" concept as set forth in the

Model Penal Code. *Final Report of the New Jersey Law Revision Commission,* Vol. I (1971), §§ 2C:1–7(d), (e) at 7–8.[12]

However, when it enacted the Code the Legislature deviated from both the Model Penal Code and the proposed New Jersey Penal Code by adding conspiracy as an included offense.[13] *N.J.S.A.* 2C:1–8(d)(2). Since the crime of conspiracy to commit a substantive offense has an element not contained in the substantive offense—the unlawful agreement—it is contended that the statute exposed defendant to conviction for an unindicted crime, an essential element of which was not considered by the grand jury.

We note initially that the very same condition applies to the crime of solicitation, which, with attempt,[14] is an included offense in the Model Penal Code, but is not an included offense under our Code. In fact, the drafters of the Model Penal Code

---

[12]The variations provided that the doctrine shall be applicable "whether or not the included offense is an indictable offense," *Report* § 2C:1–7(d) at 7, and "[t]he Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." *Id.* § 2C:1–7(e) at 8. The Model Penal Code required that there also be a rational basis for a verdict "acquitting the defendant of the offense charged." In addition, solicitation is not listed as an "included offense" within *N.J.S.A.* § 2C:1–8(d)(2).

[13]Utah's Criminal Code also treats conspiracy as an included offense. *See* Utah Code Ann. § 76–1–402(3)(b), which provides a defendant may be convicted of an offense included in the offense charged when "[i]t constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein."

[14]The drafters of the Model Penal Code indicate that the specification of attempt as an included offense was intended to avoid the contention, rejected by the Model Penal Code, that proof of failure is a necessary element of the crime of attempt:

Specific reference to attempt is desirable because of the common dogma that failure is an element of an attempt and that therefore an attempt requires proof of a fact, the failure, not required for conviction of the completed offense. Since the attempt provision of the Code does not require proof of failure as an element of the attempt, specific inclusion of attempt is unnecessary. Even so, the separate provision makes this point explicit. [*MPC* § 1.07 at 132 (footnotes omitted).]

expressly acknowledge this aspect of the crime of solicitation: "A separate provision dealing with solicitation is required because solicitation does require proof of a fact, namely the solicitation, which is not required for the completed crime." *MPC* § 1.07 comment at 132.

We also take note of the significant changes in the law of conspiracy that the Code has effected. Prior to the Code's adoption we treated conspiracy and the substantive offense as separate crimes, with the result that the conspiracy to commit an offense and the subsequent commission of the offense normally did not merge. *State v. Hardison,* 99 *N.J.* 379, 383 (1985). Under the Code, however, if the conspiracy does not have objectives that go beyond the substantive offense, the defendant may not be convicted of both the conspiracy and the substantive crime. *N.J.S.A.* 2C:1–8(a)(2).

> The Code takes the view that in this sense conspiracy is similar to attempt, which is a lesser-included offense of the completed offense. A conviction of the completed offense will adequately deal with the conduct. The Code's drafters were equally explicit that "[t]his is not true, however, where the conspiracy has as its objective engaging in a course of criminal conduct since that invovles a distinct danger in addition to that involved in the actual commission of any specific offense." [*State v. Hardison, supra,* 99 *N.J.* at 386 (quoting the *Code Commentary* at 18–19).]

Consistent with the view that the conspiracy is no more serious than the substantive offense, the Code grades conspiracy as a crime of the same degree as the most serious crime that is its object, *N.J.S.A.* 2C:5–4(a),[15] but authorizes the court to impose sentence for a crime of a lower degree if neither the "conduct charged nor the defendant present a public danger warranting the grading provided for such crime * * *." *N.J.S.A.* 2C:5–4(b).[16] The Code's authorization of lesser sentences for certain conspiracies than would be required for their related

---

[15]However, the Code treats differently a conspiracy to commit a crime of the first degree, which is graded as a crime of the second degree. *N.J.S.A.* 2C:5–4(a).

[16]*N.J.S.A.* 2C:5–4(b) provides as follows:

substantive offenses suggests that the Code's specification of conspiracy as an included offense may often be beneficial to defendants, not unlike the benefit accorded to defendants by the common-law doctrine of lesser-included offenses. *State v. Saulnier, supra,* 63 *N.J.* at 205.

In determining whether the Legislature's designation of conspiracy as an included offense offends the constitutional guarantee of indictment by a grand jury, we should not be diverted by a mechanistic test that simply matches the elements of conspiracy against those of the crime charged in the indictment. The appropriate inquiry must focus on the interrelationship between the two offenses in order to determine if the grand jury's deliberations as to the substantive offense can fairly be viewed as encompassing a preparatory agreement to engage in conduct that constitutes the substantive offense. *N.J.S.A.* 2C:5–2(a). *Cf. State v. Talley, supra,* 94 *N.J.* at 393 (the "consolidation of theft offenses" provision, *N.J.S.A.* 2C:20–2(a), of the Code does not offend the Constitution and a "defendant suffers no prejudice where * * * the conviction is for an offense that in legal contemplation is embraced by the robbery indictment when read in the light of the 'consolidation of theft offenses' provision.").

In this case the grand jury indicted the three defendants for the theft of more than 5000 cases of canned tuna. The evidence presented to the grand jury suggested that the stolen merchandise was removed by truck between January and April, 1981, pursuant to a prearranged plan that involved defendant Montgomery, who admitted his role in signing fraudulent gate

---

The court may impose sentence for a crime of a lower grade or degree if neither the particular conduct charged nor the defendant presents a public danger warranting the grading provided for such crime under subsection a. because:

(1) The criminal attempt or conspiracy charged is so inherently unlikely to result or culminate in the commission of a crime; or

(2) The conspiracy, as to the particular defendant charged, is so peripherally related to the main unlawful enterprise.

passes, and at least two other participants—a truck driver (Gonzalez) and a hi-lo operator (defendant). Each aspect of the prosecution of this case, including the grand-jury presentation, discovery, and the trial, was based upon the existence of concerted action and agreement among at least these three defendants over a period of time. It is virtually inconceivable that the grand jury, hearing and considering the evidence presented, could have found sufficient basis to indict defendant, Gonzalez, and Montgomery for theft without necessarily concluding that these defendants had, in advance of the theft, conspired with each other to commit the theft. *N.J.S.A.* 2C:5-2(b).[17]

We cannot forecast that in every case in which this statute will be applied the relationship between the substantive offense and the crime of conspiracy to commit that offense will be such that the grand jury could not have indicted for the substantive crime without considering evidence encompassing the elements of a conspiracy to commit that crime. The better practice for prosecutors is to request the grand jury to indict for conspiracy whenever the facts would support such an indictment.

However, in construing a penal statute, our obligation is to so construe the statute as to render it constitutional if it is reasonably susceptible to such an interpretation. *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104 (1983); *State v. Profaci,* 56 *N.J.* 346, 350 (1970). In our view, the appropriate construction of *N.J.S.A.* 2C:1-8(d)(2) is that its application is limited to cases in which the trial court may reasonably infer that the elements of the crime of conspiracy were fairly impli-

---

[17] *N.J.S.A.* 2C:5-2(b) provides as follows:

> If a person guilty of conspiracy, as defined by subsection a. of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, whether or not he knows their identity, to commit such crime.

cated in the evidence that was considered by the grand jury in its deliberations. By so construing the statute, we will deter its application in cases in which the grand jury's deliberations did not encompass the elements of conspiracy, thereby avoiding a direct conflict between the statute and the constitutional right of grand jury indictment.[18]

We therefore conclude that the application of *N.J. S.A.* 2C:1–8(d)(2) in this case does not offend the constitutional guarantee of indictment by grand jury. *N.J. Const.* of 1947, art. I, para. 8. The essential elements of the crime of conspiracy to commit theft were clearly implicated in the evidence that was actually considered by the grand jury when it indicted defendants for the substantive offenses. The Code's treatment of conspiracy as a crime that ordinarily merges with the substantive offense, *N.J.S.A.* 2C:1–8(a)(2), and is graded for sentencing purposes either the same as or less severely than the substantive offense, *N.J.S.A.* 2:5–4, is persuasive of the Legislature's intention to treat conspiracy as simply a preliminary step toward the completion of the substantive offense. *Code Commentary* at 111. The Code's reformulation of the crime of conspiracy and the inextricable relationship between conspiracy and the indicted offenses in this case compels the conclusion that the application of *N.J.S.A.* 2C:1–8(d)(2) did not violate defendant's constitutional rights.

For the reasons stated, the judgment of the Appellate Division is reversed and the judgment of conviction is hereby reinstated.

*For reversal* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance* —None.

---

[18]Obviously, a trial court would not invoke the statute and charge conspiracy in a case in which the grand jury was asked to indict for conspiracy but declined to do so. .