STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
FREDERICK W. KOCEN, JR.,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1988—Decided February 5, 1988.

---

[9]*Rainier's Dairies* held that although an absolutely privileged filing of a license revocation complaint could not support a tortious interference claim, it could be the subject of a valid complaint for malicious prosecution of a civil proceeding, "which by its severe restrictions gives due recognition to the counter-policy in favor of free access to judicial and *quasi*-judicial bodies...." 19 *N.J.* at 564. This is a matter not now before us, and we express no opinion with respect to the continued viability of this part of *Rainier's Dairies.*

Before Judges R.S. COHEN and LANDAU.

*James M. McGovern, Jr.,* argued the cause for appellant (*Ansell, Fox, Zaro & McGovern,* attorneys; *Patricia F. Stefanile,* on the brief).

*Patricia Quelch,* Assistant Prosecutor, argued the cause for respondent (*John A. Kaye,* Monmouth County Prosecutor, attorney; *Mark P. Stalford,* Assistant Prosecutor, of counsel).

The opinion of the court was delivered by

COHEN, R.S., J.A.D.

Defendant Frederick W. Kocen, Jr. was indicted for violating *N.J.S.A.* 2C:20–8(a) in that between 1975 and 1986 he "did unlawfully and purposely obtain, without compensation, from New Jersey Natural Gas Company, services, to wit: natural

gas, with a value in excess of $500." He was tried to a jury, found guilty, and sentenced to a probationary term, a $250 fine and ordered to make restitution to New Jersey Natural Gas Company in the amount of $7176.79 at $100 per month. He appealed. We reverse and remand for dismissal of the indictment.

At its best, the State's evidence showed these facts. Defendant and his family bought and moved into an existing home in 1975. It was served with natural gas by New Jersey Natural Gas Company. There was a meter on the premises. Defendant was not billed for use of gas, because the utility had mistakenly recorded the location of the property when it installed gas service for defendant's predecessor in 1970, and soon thereafter gave up trying to correct its error. It had no record of an account at defendant's address. It thus unknowingly continued to supply gas without charge.

Defendant knew that one normally pays for gas, and that he was not doing so. Indeed, after a few years in the house he converted from oil heat to gas heat, apparently as an economy measure. In defense at trial, defendant and family members described unsuccessful efforts to establish an account with the utility in 1975. There was nothing in the evidence to indicate that defendant or anyone else made any false, deceptive or threatening statements to the utility or tampered with the meter or other part of the gas delivery system.

*N.J.S.A.* 2C:20–8(a) says in pertinent part:

A person is guilty of theft if he purposely obtains services which he knows are available only for compensation, by deception or threat, or by false token, slug, or other means, including but not limited to mechanical or electronic devices or through fraudulent statements, to avoid payment for the service.

Plaintiff's conduct is not criminalized by this statute. He knowingly accepted services without payment which he knew were available only for compensation. There was no evidence, however, of use of deception or threat, false token, slug,

mechanical or electronic devices, or fraudulent statements.[1] But, the State asks, what about the statutory phrase, "other means"? Those words appear in a list whose common characteristic is the doing of an affirmative verbal or physical act whose purpose is to deceive, defraud or threaten, or to foil a supplier's metering or collection system. There is nothing to indicate that the Legislature meant to ignore the canon of *ejusdem generis*[2] and to use the phrase "other means" to criminalize the passive act of knowingly accepting services for which the supplier negligently does not send a bill.

We hold that a person who knowingly accepts services without payment which the person knows are available only for compensation does not violate *N.J.S.A.* 2C:20–8(a) unless there is a verbal or physical act of deception, fraud or threat, or false token, slug, mechanical or electronic device or like means employed to avoid payment for the service.

We need not deal with defendant's argument that a broader definition of the words "other means" would render the statute unconstitutionally vague, or the unbriefed question whether defendant's conduct might have been punishable under *N.J.S.A.* 2C:20–6. We also need not address defendant's complaints of trial error.

Our decision does not reward deadbeats. Neither does it offer the criminal law as a remedy for a utility's self-created failure to bill a customer for eleven years. Civil liability is another matter. We understand it is not contested in this case.

---

[1] *Compare State v. Dixon,* 220 *N.J.Super.* 550 (App.Div.1987), where defendant tampered with the utility's meter to obtain free services. *See also State v. Insabella,* 190 *N.J.Super.* 544 (App.Div.1983).

[2] When general words follow specifically named things of a particular class the general words must be understood as limited to things of the same class, or at least of the same general character. *Denbo v. Moorestown Twp.,* 23 *N.J.* 476, 482 (1957).

Reversed and remanded with instructions to enter judgment dismissing the indictment.