POLANSKY, J.S.C.
*84 Under Indictment Number 17-03-00575, defendant Daniel Marks is charged with third-degree theft of services in violation of N.J.S.A. 2C:20-8(a) (count one).
STATEMENT OF FACTS
The State alleges that on November 23, 2016, Cpl. Richard Zappile of the Delaware River Port Authority received information that a 2011 grey Hyundai, registered to Erinn Thompson, repeatedly evaded tolls while crossing the Benjamin Franklin and Walt Whitman bridges, by driving through the EZ-Pass Only lanes without having a valid EZ-Pass transponder. Cpl. Zappile was provided with a log of each violation as well as images and the license plate number of the offending vehicle. A review of the logs showed that between May 2, 2016, and November 15, 2016, the vehicle made 220 crossings of the Benjamin Franklin Bridge and four crossings of the Walt Whitman Bridge without paying the five-dollar toll. The total amount of unpaid tolls was $ 1120. Administrative fees totaled $ 5600. Notices of each violation were mailed to the registered owner of the vehicle, but she failed to respond to the notices.
*85 Cpl. Zappile contacted Thompson, who advised him that her boyfriend, defendant Daniel Marks, was the operator of the motor vehicle at the time of these violations. Defendant later contacted Cpl. Zappile and admitted that he was responsible for all of the violations. Defendant subsequently surrendered himself to police and provided a recorded statement in which he admitted that he was responsible for each and every toll evasion, that he knew he was required to pay a five-dollar toll, and that he intentionally drove through the EZ-Pass lane to avoid paying the toll. He also admitted that he received a violation notice for each violation and ignored the notices.
On February 8, 2017, this case was presented to a Camden County Grand Jury. The sole witness at the hearing was Cpl. Zappile, who testified to the above facts. These facts are not disputed by defendant.
LEGAL ANALYSIS
A grand jury holds a central role in the enforcement of criminal law in New Jersey. The New Jersey Constitution provides that "no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." N.J. Const. art. I, ¶ 8. The grand jury "must determine whether the State has established a prima facie case that a crime has been committed and that the *804 accused has committed it." State v. Hogan, 144 N.J. 216, 227, 676 A.2d 533 (1996). The grand jury has the additional role of making sure the State does not bring "arbitrary, oppressive, and unwarranted criminal accusations." State v. LeFurge, 101 N.J. 404, 418, 502 A.2d 35 (1986). See also Hogan, 144 N.J. at 228, 676 A.2d 533 ("We have recognized that the grand jury is the 'primary security to the innocent against hasty, malicious, and oppressive persecution.' " (quoting State v. Del Fino, 100 N.J. 154, 164, 495 A.2d 60 (1985) )).
The bar for dismissing a grand jury's indictment is high. An indictment should be dismissed "only on the 'clearest and plainest ground' " and "only when the indictment is manifestly *86 deficient or palpably defective." Hogan, 144 N.J. at 228-29, 676 A.2d 533 (quoting State v. Perry, 124 N.J. 128, 168, 590 A.2d 624 (1991) ). This decision "lies within the discretion of the trial court." Id. at 229, 676 A.2d 533 (citing State v. McCrary, 97 N.J. 132, 144, 478 A.2d 339 (1984) ). Moreover, the Court is within its right to exercise its power in dismissing an indictment to correct injustices. Id. at 231, 676 A.2d 533. "[O]ur precedents make clear that this Court may invoke its supervisory power to remedy perceived injustices in grand jury proceedings." Ibid.
A trial court considering a motion to dismiss an indictment must consider whether the evidence presented to the grand jury establishes a prima facie case against a defendant. "An indictment that appears sufficient on its face stands if the State presents the Grand Jury with at least 'some evidence' as to each element of a prima facie case." State v. Vasky, 218 N.J. Super. 487, 491, 528 A.2d 61 (App. Div. 1987) (holding that the State presented insufficient evidence as to the charge of theft, where the only evidence presented as to the value of the stolen property was not based on personal knowledge and was speculative). However, "the quantity and quality of evidence before a grand jury need not be much to support an indictment." Id. at 489, 528 A.2d 61.
A grand jury shall not "return an indictment unless the State has presented evidence which together with the reasonable inferences [they] draw from that evidence leads [them] to conclude that (1) a crime has been committed and (2) the accused has committed it." State v. Morrison, 188 N.J. 2, 13, 902 A.2d 860 (2006). A court looking at a grand jury transcript on a motion to dismiss an indictment "should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." Ibid. (citing State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967) ). Dismissal of an indictment is proper if it is factually unsupported on its face or in the grand jury proceedings. State v. Mason, 355 N.J. Super. 296, 299, 810 A.2d 88 (App. Div. 2002).
*87 To sustain a conviction under N.J.S.A. 2C:20-8 for theft of services, the State must establish four elements: (1) that defendant purposely obtained a service; (2) that defendant knew the services were available only for compensation; (3) that defendant obtained the services by deception or threat, or by false token, slug or other means, including but not limited to mechanical or electrical devices or through fraudulent statements; and (4) that defendant's purpose was to avoid payment for the service. The theft of services statute provides that, "[w]here compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, absconding without payment or offer to pay gives rise to a presumption that the service was obtained *805 by deception as to intention to pay." N.J.S.A. 2C:20-8(a).
Defendant argues that the State failed to establish that defendant obtained services by deception in the presentation to the grand jury. The Model Criminal Jury Charges provide:
A person "deceives" if he/she "purposely creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he/she did not subsequently perform the promise." A person also deceives when he/she "prevents another from acquiring information which would affect (his/her) judgment of a transaction; or fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he/she stands in a fiduciary or confidential relationship."
[Model Jury Charges (Criminal), "Theft of Services ( N.J.S.A. 2C:20-8(a) )" (rev. Mar. 22, 1999).]
A wide range of conduct is criminalized under the theft of services statute, including tampering with a meter, putting slugs in turnstiles, and hiring workers without an intention to pay them. See Cannell, N.J. Criminal Code Annotated, cmt. 2 on N.J.S.A. 2C:20-8 (2016). To obtain a conviction for theft of services, the State must establish a physical or verbal act of deception. State v. Kocen, 222 N.J. Super. 517, 520, 537 A.2d 731 (App. Div. 1988).
Defendant relies upon State v. Kocen to support his argument that his conduct is not a criminal act under the statute. The court *88 in Kocen reversed the defendant's conviction for theft of services where the defendant moved into a home supplied with natural gas service but never paid for the natural gas. Id. at 519, 537 A.2d 731. Due to a clerical error, the gas company never billed the defendant for the use of the gas nor changed the account holder. Ibid. The court held that despite the defendant's knowledge that owners typically pay for natural gas, since there was no "verbal or physical act of deception, fraud or threat, or false token, slug, mechanical or electronic device or like means employed to avoid payment for the service," the defendant did not violate the statute. Id. at 520, 537 A.2d 731. The defendant there did not tamper with the meter or provide any false statements to the gas company. Ibid. See also State v. Bennett, 194 N.J. Super. 231, 235, 476 A.2d 833 (App. Div. 1990) (reversing a conviction for theft of services where the defendant applied for and was granted a line of credit at a casino despite the defendant's representations of little resources, where the bank later declined the credit application).
Here, the defense argues that the indictment must be dismissed because the State failed to present to the grand jury evidence of any physical or verbal act of deception. Defendant asserts that like the accused in Kocen, he did not make any representations or present any false tokens. Additionally, defendant argues that failure to pay an EZ-Pass toll is a civil issue, not a criminal act. Third, defendant contends that he was improperly charged with a third-degree offense. Defendant asserts that because this conduct should be penalized through civil penalties, theft of services is not subject to the gradation of theft offenses in N.J.S.A. 2C:20-2(b).
In response, the State argues that this case is distinguishable from Kocen. In Kocen, the gas company delivered gas to the defendant without billing the defendant, due to a clerical error. The State submits that no one delivered the bridge or toll service to defendant Marks without seeking payment for the service. Rather, the *806 State argues defendant repeatedly took the volitional action of entering the lane marked EZ-Pass Only and driving through the toll without having an EZ-Pass transponder. Defendant *89 repeatedly drove through the EZ-Pass Only lanes for the purpose of avoiding payment for the service, use of the bridge, and concealed this from toll collectors.
The State also asserts that the grading statute, N.J.S.A. 2C: 20-2(b), applies in this case. As the title of the statute suggests, "Consolidation of theft and computer criminal activity offenses," the provisions of N.J.S.A. 2C:20-2(b) apply to theft offenses generally. As theft of services is located within the same section of the criminal code, the gradation portion applies to theft of services. Likewise, the evidence presented to the grand jury demonstrates that the value of the toll evaded totals $ 1120. N.J.S.A. 2C:20-2(b) provides that theft constitutes a crime of the third degree if the amount involved exceeds $ 500 but is less than $ 75,000. Finally, the State argues that the existence of civil liability does not preclude criminal action for the same conduct, citing State v. Darby, 246 N.J. Super. 432, 587 A.2d 1309 (App. Div. 1991).
DECISION
Here, the court concludes the presentation to the grand jury establishes a prima facie case under N.J.S.A. 2C:20-8(a). The State presented some evidence as to each element of the crime of theft of services. First, the State presented evidence that defendant purposely obtained a service. Driving over a bridge subject to a toll is a service. By presenting evidence that defendant drove his vehicle over the bridge, the State presented evidence that defendant purposely obtained a service. Second, the State presented testimony that defendant knew that the services were available only for compensation. The State submitted evidence that defendant drove through the lanes marked EZ-Pass Only. This allows an inference that defendant knew that the service was only available in exchange for payment. Defendant additionally admitted he was aware he was intentionally avoiding the toll.
Third, the State presented sufficient evidence of defendant's physical act of deception. Specifically, the State presented testimony that defendant traveled through the EZ-Pass lane, knowing *90 that he did not have an EZ-Pass transponder. Use of the EZ-Pass Only lane is a representation that the vehicle operator possesses a valid EZ-Pass transponder. Driving through the EZ-Pass Only lane has no significant difference from placing a false slug or token into an unmanned toll collection receptacle. This evidence is sufficient to establish a physical act of deception by defendant. Defendant's purpose to avoid payment can be inferred from those actions. Additionally, since compensation is ordinarily paid when driving over the bridge, the presumption pursuant to N.J.S.A. 2C:20-8(a) that defendant's purpose was to avoid payment for the service applies. Finally, defendant admitted his intent was not to pay the tolls.
Defendant's reliance upon Kocen is misplaced. Here, there is a physical act of deception by defendant. By repeatedly driving through the EZ-Pass Only lane without a valid transponder, defendant was committing an act of deception, unlike Kocen, where the defendant was never billed for the use of natural gas.
Counsel's argument that the theft of services statute does not fall within the grading provisions of N.J.S.A. 2C:20-2(b) is not supported by the statute or case law. The grading portion of the theft statute is a general provision which applies to all categories of theft.
*807 N.J.S.A. 2C:20-2(b)(2) makes theft of more than $ 500 but less than $ 75,000 a third degree crime. Defendant made 220 crossings of the Ben Franklin Bridge and four crossings of the Walt Whitman Bridge from New Jersey to Pennsylvania without paying the five-dollar toll, making each individual violation amount of only five dollars.[1]
Pursuant to N.J.S.A. 2C:20-2(b), "[a]mounts involved in thefts or computer criminal activities committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense." The New Jersey Supreme Court has held that theft-based *91 offenses may be aggregated, including theft by deception. State v. Diorio, 216 N.J. 598, 618, 83 A.3d 831 (2014). When discussing aggregating theft by deception for the purposes of the statute of limitations, the Court in Diorio explained that our "courts have found a plain appearance that the Legislature intended to prohibit a continuing course of conduct in situations involving a common scheme of ongoing conduct and where, by the terms of the statute prohibiting the conduct, the amounts involved can be aggregated to form a single offense." Id. at 617, 83 A.3d 831 (citing State v. Coven, 405 N.J. Super. 266, 276, 963 A.2d 1254 (App. Div. 2009) ).
Likewise, in State v. Childs, the Appellate Division found a continuing course of conduct where the defendant raised money for his corporation. 242 N.J. Super. 121, 134, 576 A.2d 42 (App. Div. 1990). The defendant in Childs misled his investors and issued short-term, unsecured, high-interest notes, which were later found to be of no value. Id. at 126, 576 A.2d 42. See also State v. Tyson, 200 N.J. Super. 137, 139-40, 150-51, 490 A.2d 386 (Law Div. 1984) (finding continuous course of conduct where the defendant made false representations to fraudulently obtain and renew welfare benefits, noting that "[t]he defendant's course of conduct was one scheme extending over a period of time involving the same victim perpetrated by the same deception" in which "the fruits of the defendant's scheme were received in installments rather than in a lump sum," and that the "consolidation of [the] theft offenses provision in N.J.S.A. 2C:20-2(b)(4)" applies).
The Supreme Court recently reiterated the distinction between crimes that can be classified "as either a discrete act or a continuing offense." State v. Jones, 445 N.J. Super. 555, 568, 139 A.3d 1191 (App. Div. 2016) (quoting Diorio, 216 N.J. at 614, 83 A.3d 831 ). " 'A discrete act' is one that occurs at a single point in time .... A continuing offense involves conduct spanning an extended period of time and generates harm that continues uninterrupted until the course of conduct ceases." Diorio, 216 N.J. at 614, 83 A.3d 831. The New Jersey Code of Criminal Justice *92 includes a presumption against continuous offenses, however, that presumption is overcome if the statute defining the offense includes conduct which persists over time. Id. at 615-16, 83 A.3d 831. "If the scheme that constitutes the offense is one which 'play[s] out over the course of many days, weeks, months, or even years[,]' then it is a course of conduct." Jones, 445 N.J. Super. at 568, 139 A.3d 1191 (quoting Diorio, 216 N.J. at 618, 83 A.3d 831 ).
The conduct at issue occurred during the period May 2, 2016, to November 15, 2016, a period of 198 days. These 224 crossings of the bridge, without paying the toll, occurred at a rate of more than once *808 per day. This conduct persisted over an extended period of time, essentially on a daily basis. These facts suffice to establish a continuing course of conduct and trigger the provision in N.J.S.A. 2C:20-2(b) which allows the amount of the thefts to be aggregated for the purpose of determining the degree of the crime.
Although defendant here is charged with theft of services, not theft by deception, the court finds this distinction to be immaterial. N.J.S.A. 2C:20-2(b) applies equally to both statutes. Defendant allegedly engaged in a course of conduct that involved an intent to deceive the same victim. The State presented evidence to the grand jury that defendant evaded $ 1120 in tolls, each time driving through the EZ-Pass Only lane with no transponder. Defendant used the same vehicle each time, which belonged to his girlfriend, and deliberately avoided paying the tolls. Similar to the defendants in Tyson and Childs, defendant engaged in repeated, similar acts of deception, with the overarching goal of avoiding paying tolls. Therefore, the third-degree charge here is proper.
Finally, the court rejects defendant's argument that the penalty for toll evasion should be limited to civil liability only. The court rejects this argument since the imposition of a civil remedy and a criminal penalty are not mutually exclusive events.
The Appellate Division examined the dichotomy between criminal sanctions and civil penalties in the context of an analysis whether double jeopardy barred a later criminal proceeding in the case of Darby, 246 N.J. Super. at 432, 587 A.2d 1309. There, the *93 defendant argued that the prior imposition of civil penalties under N.J.S.A. 49:3-70(b) for violations of the Uniform Securities Law barred a later prosecution alleging conspiracy to commit theft in violation of N.J.S.A. 2C:5-2, 2C:20-4 and 2C:20-9. Id. at 435, 587 A.2d 1309. The defendant moved to dismiss the indictment based upon the constitutional protection against double jeopardy, arguing that the prior civil action seeking civil penalties under the Uniform Securities Law precluded the later criminal prosecution.
The Darby court explained that the twin goals of a criminal prosecution are retribution and deterrence. Id. at 445, 587 A.2d 1309. Civil penalties on the other hand also have a remedial purpose and do not exclusively serve the goals of retribution and deterrence. Id. at 444, 587 A.2d 1309. The Darby court instructed that a court must evaluate whether the civil penalty is actually assessed for a punitive purpose to determine whether double jeopardy applies. Id. at 443, 587 A.2d 1309.
The ability of the State to seek both civil penalties and criminal liability as a result of the same or similar conduct is not limited to securities violations. The statutory scheme for the enforcement of tax laws likewise permits both civil and criminal penalties. N.J.S.A. 54A:9-6 provides for civil penalties as a result of a failure to file a tax return or the filing of a fraudulent tax return. At the same time, where there is an intent to defraud the state or to evade or avoid the payment of taxes, criminal penalties may also be imposed pursuant to N.J.S.A. 54:52-8 and N.J.S.A. 54:52-9.
No case has been cited by defendant which precludes the imposition of both civil and criminal penalties as a result of the same conduct. The court finds that no prohibition exists which would prevent the State or other governmental agency from seeking both criminal and civil penalties as a result of the same or similar conduct. Rather, the only limitation to the right of the State to seek such penalties is the potential that where the civil penalties are deemed to be assessed primarily to serve the punishment goals of retribution and *809 deterrence, an analysis would be required to determine whether double jeopardy attaches. *94 Here, a demand for civil penalties has been made but no formal court proceedings commenced to collect those civil penalties. Further, the civil penalties assessed here also serve a remedial purpose and serve to compensate the toll collecting authority for the costs associated with collection of unpaid tolls. Additionally, the court notes that the civil penalties are imposed regardless of whether the toll violation is inadvertent or intentional. N.J.S.A. 27:23-34.2(a).
For these reasons, the court concludes that the attempt to collect a civil penalty as a result of defendant's failure to pay the required toll on multiple occasions does not preclude indictment or conviction for this conduct. Accordingly, the motion to dismiss the indictment will be denied.

The five-dollar toll is paid crossing the bridge from New Jersey to Pennsylvania. No toll is required crossing the bridge from Pennsylvania to New Jersey.