234 N.J. Super. 298 (1989)
560 A.2d 1233
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCISCO RODRIGUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1989.
Decided June 30, 1989.
*301 Before Judges DREIER, HAVEY and BROCHIN.
Justin T. Loughry argued the cause for appellant (Tomar, Seliger, Simonoff, Adourian & O'Brien, attorneys; Justin T. Loughry and Charles N. Riley, on the brief).
Jack L. Weinberg, Assistant Prosecutor, argued the cause for respondent (Samuel Asbell, Camden County Prosecutor, attorney; Jack L. Weinberg, on the brief).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
The first, third, fifth and seventh counts, respectively, of a nine-count indictment charged defendant Francisco Rodriguez with possession of 27.65 grams of cocaine on May 8, 1986; 0.21 grams on May 9, 1986; 27.75 grams, of which 23.7 grams was free base, i.e. pure cocaine, on May 14, 1986; and 26.7 grams, of which 21.3 grams was free base, on May 23, 1986, contrary to N.J.S.A. 24:21-20(a). The second, fourth, sixth, and eighth counts, respectively, of the indictment charged that he distributed that quantity of cocaine on the stated date, contrary to N.J.S.A. 24:21-19(a)(1). The ninth count alleged that from on *302 or about May 7, 1986, to on or about May 28, 1986, defendant conspired with Luz Ramirez, Nelson Cartagena, Elliot Piniero, and Francisco Mendez, who were also charged in the indictment, to distribute cocaine contrary to N.J.S.A. 2C:5-2, N.J.S.A. 24:21-24, and N.J.S.A. 24:21-19. There was no allegation of what quantity of cocaine Rodriguez had conspired to distribute.
The evidence against Rodriguez consisted primarily of the testimony of Nelson Cartagena, who had pleaded guilty pursuant to a plea agreement, and of Juan Acevedo, Jr., an undercover investigator with the Camden County Prosecutor's Office who had purchased cocaine from Rodriguez's co-conspirators, ostensibly for resale. Acevedo did not make any purchases directly from the defendant. However, he inculpated Rodriguez primarily by testifying to statements of the defendant's co-conspirators.
A jury found defendant guilty on each of the counts of the indictment. In response to a special interrogatory, the jury also found that the object of the conspiracy was to distribute one ounce or more of cocaine containing at least 3.5 grams of pure free base.
Following the verdict the court merged the first eight substantive counts of the indictment into the ninth conspiracy count and sentenced the defendant to life imprisonment with 25 years' parole ineligibility for conspiracy to distribute cocaine.
Defendant's two most substantial grounds of appeal are (1) the admission into evidence of his co-conspirators' out-of-court statements, and (2) his sentence of life imprisonment for conspiracy to distribute more than an ounce of cocaine containing at least 3.5 grams of free base, after trial and conviction on an indictment which did not charge distribution of those quantities as the object of the conspiracy. Rodriguez also claims that the court erroneously limited his attempts to prove his co-conspirators' commission of other crimes to impeach the statements which were attributed to them, that a mistrial should have been granted because of improper conduct by the prosecutor during *303 summation, and that the jury was "tainted" as the result of three jurors' reading a newspaper article about Acevedo's participation in another case. He further contends that the court mistakenly refused to provide a readback of testimony about the first drug transaction in which defendant was implicated, that his sentence should be set aside because the court conferred with the jurors after receipt of their verdict, but before sentencing, and that his punishment was, in any event, manifestly excessive.
For the following reasons, we hold that the defendant was not subject to be sentenced to life imprisonment. We vacate the judgment insofar as it merged the first eight counts into the ninth, and we remand the case for resentencing. In all other respects, we affirm the judgment of the trial court.

I
[Part I of this opinion deals with defendant's challenge to the admission into evidence of his co-conspirators' out-of-court statements. It is primarily factual and has been omitted from the published opinion because of its length.]

II
We turn now to defendant's second principal ground of appeal, the court's submission of a special interrogatory to the jury as part of the verdict sheet, asking the jurors whether the object of the conspiracy was to distribute an ounce or more of cocaine including at least 3.5 grams of free base. They answered the question affirmatively and, based upon the language of N.J.S.A. 24:21-24 and N.J.S.A. 24:21-19, the trial court ruled that life imprisonment was within the range of sentences which could legally be imposed upon the defendant.
The first of those two statutory sections makes conspiring to distribute cocaine punishable by imprisonment or a fine, or both, which may not exceed the maximum punishment prescribed for the "offense, the commission of which was the *304 object of the ... conspiracy." The second section prescribes the punishment for the distribution of cocaine, a Schedule II drug. It reads as follows:
a.... it shall be unlawful for any person knowingly or intentionally:
(1) To manufacture, distribute, or dispense, or to possess or have under his control with intent to manufacture, distribute, or dispense, a controlled dangerous substance; or....
(2) ....
b. Any person who violates subsection a. with respect to:
(1) A substance in a quantity of less than one ounce including any adulterants or dilutants, classified in Schedules I or II which is a narcotic drug, or in a quantity of 1 ounce or more with there being included less than 3.5 grams of the pure free base Schedule I or II narcotic drug, is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 12 years, a fine of not more than $25,000.00, or both; or
(2) A substance, in quantity of one ounce or more including any adulterants or dilutants, classified in Schedules I or II which is a narcotic drug, provided that there are included at least 3.5 grams of the pure free base Schedule I or II narcotic drug, is guilty of a high misdemeanor and shall be punished by imprisonment for up to life, a fine of not more than $25,000.00, or both....
To justify the trial court's conclusion that Rodriguez is subject to life imprisonment, the maximum sentence for a conspiracy whose object is to distribute an ounce or more of a substance containing at least 3.5 grams of cocaine, the State relies on State v. Hardison, 99 N.J. 379 (1985). However, Hardison holds only that a defendant cannot be convicted both for conspiracy and for a substantive offense if the objectives of the conspiracy are limited to consummation of that same substantive offense. In the present case the validity of the life sentence imposed on Rodriguez depends on whether the jury could properly convict him of participating in a conspiracy whose object was the distribution of an ounce or more of a substance containing at least 3.5 grams of pure cocaine without the indictment on which he was tried expressly charging that sentence-enhancing objective. Hardison does not answer that question.
Generally, facts which will aggravate the crime of which a defendant is accused and enhance the punishment to which he will be subject are said to be an "element" of the offense, N.J.S.A. 2C:1-14(h), and must therefore be charged in *305 the indictment, State v. Ingram, 98 N.J. 489 (1985), quoting State v. Hock, 54 N.J. 526, 536 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). For example, the value of stolen property must be alleged in a theft indictment because the value determines the degree of the offense; if the indictment fails to allege the value of the property stolen, then, absent a waiver, the defendant can be convicted only of the lowest indictable theft offense. State v. D'Amato, 218 N.J. Super. 595 (App.Div. 1987), certif. den. 110 N.J. 170 (1988). A defendant tried on a robbery indictment which does not allege that he attempted to kill someone, or that he purposely inflicted or attempted to inflict serious bodily injury, or that he was armed with, or used or threatened the immediate use of a deadly weapon can be convicted only of second degree robbery. State v. Catlow, 206 N.J. Super. 186 (App.Div. 1986).[1] To subject a defendant to life imprisonment under a statute which provides that the sentence for employing a minor to transport illegal drugs will be life imprisonment if the defendant is not addicted to narcotic drugs and a lesser punishment if he is, the State is required to allege non-addiction in the indictment and to prove it at trial. State v. Nelson, 123 N.J. Super. 583 (Essex Cty. Ct. 1973) (Yanoff, J.).
Our courts have also held, at least implicitly, that there are some categories of facts which do not have to be charged in an *306 indictment in order to aggravate an offense or enhance its punishment. In all such cases, however, the facts critical to the degree of the offense or the severity of the punishment, if not conceded, must be proved, on notice, in a post-conviction proceeding. For example, pursuant to the Graves Act, possession of a firearm during the commission or the attempt to commit any one of an enumerated list of offenses requires the imposition of a mandatory prison sentence with a period of parole ineligibility. N.J.S.A. 2C:43-6c; State v. Stewart, 96 N.J. 596 (1984). Second offenders under certain of the statutes prohibiting the manufacture or distribution of controlled dangerous substances must be sentenced to extended terms. N.J.S.A. 2C:43-6f. See also State v. Laird, 25 N.J. 298, 303 (1957); and State v. Booker, 88 N.J. Super. 510, 514 (App.Div. 1965), cert. den. 384 U.S. 944, 86 S.Ct. 1472, 16 L.Ed.2d 543 (1966), which suggest that "The usual practice is to allege the prior convictions or presumably any other aggravating facts in the indictment, save where the statute makes other adequate provision for the inquiry. ... [emphasis in the original]." Statutes such as these imposing a heavier penalty on a second or habitual offender are said not to create a new substantive crime, but rather to impose a greater penalty for the particular crime for which the defendant has been convicted. State v. Washington, 47 N.J. 244, 248 (1966).
We hold that an objective to distribute an ounce or more of a substance containing at least 3.5 grams of pure cocaine was an element of the offense for which Rodriguez was sentenced. Therefore, he could not be subjected to life imprisonment unless a grand jury had alleged that objective. This requirement follows from the function of an indictment, to inform the defendant of the offense charged against him so that he may adequately prepare his defense, to preclude a trial jury from substituting an offense which the grand jury did not in fact consider or charge and to enable the defendant to avoid subsequent prosecution for the same offense. See State v. LeFurge, 101 N.J. 404, 415 (1986), and cases cited therein.
*307 In the present case, however, the conspiracy count of the indictment against defendant does not expressly allege that the object of the conspiracy was to distribute at least one ounce of a substance containing at least 3.5 ounces of cocaine. It states only that the persons named, including Rodriguez, conspired between May 7, 1986 and May 28, 1986 to distribute a controlled dangerous substance, cocaine. However, the second, fourth, sixth and eighth counts of the indictment allege distributions of cocaine on four specific dates within that time period which aggregate more than one ounce of cocaine containing more than 3.5 grams of pure free base. Since the State had no evidence that Rodriguez himself physically handled drugs, the testimony presented to the grand jury, like the testimony offered at trial, proved only that defendant acted through others, that is, that he participated in a conspiracy. As a factual matter, therefore, the grand jury clearly found that Rodriguez was engaged in a conspiracy whose objective was the distribution of at least one ounce of a substance containing at least 3.5 grams of pure cocaine. Cf. State v. LeFurge, supra, which holds that a defendant may be convicted of conspiracy to commit the substantive offense for which he has been indicted even though the indictment does not charge him with conspiracy, provided that "the elements of the crime of conspiracy were fairly implicated in the evidence that was considered by the grand jury in its deliberations." Id. at 423-424.
The question remains, however, whether the indictment upon which defendant was tried sufficiently informed him that he was charged with participating in a conspiracy whose object was to distribute an ounce or more of cocaine containing at least 3.5 grams of free base so that he might adequately prepare his defense. See Id. at 415. The State argues that since the individual drug transactions charged in the first eight counts of the indictment are clearly encompassed within the conspiracy charged in the ninth count, that count should be read as implicitly alleging that the object of the conspiracy was *308 to distribute at least the aggregate of the quantities of cocaine referred to in the first eight counts. Defendant, however, argues that N.J.S.A. 24:21-19 and N.J.S.A. 24:21-24, unlike the new drug law, made no provision for aggregating the quantities of drugs involved in several separate distributions to determine whether the maximum penalty for the offense will be twelve years or life imprisonment. Prior to its 1988 amendment, the new drug law adopted by L. 1987, c. 106, § 1 read:
The quantity involved in individual acts of manufacturing, distribution, dispensing or possessing with intent to distribute may be aggregated in determining the grade of the offense, whether distribution or dispensing is to the same person or several persons, provided that each individual act was committed within the applicable statute of limitations.
Presumably because of concerns about the constitutionality of the statute, it was amended by L. 1988, c. 44, § 2 so that it now reads:

Where the indictment or accusation so provides, the quantity involved in individual acts of manufacturing, distribution, dispensing or possessing with intent to distribute may be aggregated in determining the grade of the offense.... [N.J.S.A. 2C:35-5(c). Emphasis added to indicate the 1988 addition.]
The Court's rationale in State v. Wein, 80 N.J. 491 (1979), is analogous to the argument which the State asserts in the present case. In Wein, the defendants were charged with distributing and conspiring to distribute an obscene film. Following trial and conviction, they appealed on the ground that the indictment did not adequately allege that they knew that the film was obscene. Concededly, knowledge was an element of the offense. The court held that the conspiracy count adequately alleged scienter because it charged that the defendant had conspired "willfully" to achieve the objects of the conspiracy and that, although the counts of the indictment which charged the substantive crime did not expressly allege, as they should have, that the defendants knew of the nature and character of the film which they distributed, those counts, too, were sufficient when considered in the context of the entire indictment.
*309 The rationale of Wein and the criterion which it provides for the sufficiency of the indictment in the present case is set forth in the following observation by the Court:
Defendants were in no way prejudiced in their ability to prepare a defense. The various counts of the indictment considered as a whole, read in proper contextual association with one another, fully apprised defendants that knowledge of the character and nature of the material actually sold was a requisite element of the crime of distribution as well as conspiracy. [Citation omitted.] Whatever factual defenses were available to the defendants to deflect the imputation of knowledge in connection with resisting the conspiracy accusation would be available in defending against the substantive charge. [Id. at 500-501. Emphasis added.]
In other words, since the conspiracy count of the Wein indictment, as construed by the court, expressly obliged the defendants in that case to defend, if they could, against the State's proof that they knew their films were obscene, there was nothing more that they would have been warned to do by an express allegation of scienter in the substantive counts.
By that criterion, the issue in the present case is whether the indictment as returned by the grand jury warned Rodriguez to contest, if he could, the State's proofs that the object of the conspiracy of which he was a member was to distribute an ounce or more of a substance containing at least 3.5 grams of pure cocaine. The conspiracy count itself does not allege, and therefore does not warn the defendant to dispute, the quantity of cocaine whose distribution was its object. The proofs relevant to the quantitative scope of the conspiracy consisted primarily of evidence of the amounts of cocaine which the indictment alleged were involved in the individual transactions. In the absence of a statutory provision for aggregation, none of the substantive counts threatened Rodriguez with more than twelve years' imprisonment, and proof that some or all of the individual transactions involved quantities smaller than those alleged would not have reduced his maximum potential exposure. The materiality of the evidence of the amounts of drugs possessed or distributed was therefore not apparent. Insofar as appeared from the indictment, Rodriguez was not obligated to challenge the State's evidence of those amounts. In that *310 respect, the present case differs critically from Wein because in that case scienter was clearly material to the count in which it was alleged; consequently the Wein indictment as returned required the defendants to dispute knowledge if they could.
To support a sentence to life imprisonment, the conspiracy count in the present case should have charged that "the object of the endeavor or conspiracy," N.J.S.A. 2C:21-24(a), was to distribute an ounce or more of a substance containing at least 3.5 grams of cocaine. If that had been alleged, defendant would have been on notice to attack the sufficiency of the State's proofs of the quantities distributed because success or failure on that issue would determine whether he was exposed to life imprisonment. We hold that before a defendant is subject to so drastic a consequence, he is constitutionally entitled to a far clearer warning than was provided him by the indictment in the present case. N.J. Const., Art. 1, ¶ 8. See State in interest of W.E.C., 81 N.J. 442, 447-448 (1979); State v. Graham, 223 N.J. Super. 571, 577 (App.Div. 1988). Under the indictment upon which defendant was tried, the special interrogatory should not have been submitted to the jury, and he should not have been sentenced as if he had been indicted and convicted of having conspired to violate N.J.S.A. 24:21-19b(2) rather than N.J.S.A. 24:21-19b(1).

III
Defendant's remaining arguments on appeal are without merit. R. 2:11-3(e). The trial court properly recognized that evidence of Piniero's drug use, misuse of his insurance clients' trust funds and dealings with Ramirez in connection with the illegal redemption of food stamps and the banking of her proceeds from other drug transactions was of little, if any, relevance to any issue of credibility. The court's determinations under Evid.R. 4 and Evid.R. 55 restricting defendant's attempts to elicit such evidence during cross-examination of Acevedo were not an abuse of discretion. The prosecutor's *311 arguments during summation, particularly when considered in the light of the court's prompt instructions to the jury, did not unfairly prejudice the defendant and do not warrant a reversal. Exposure of several of the jurors to a newspaper article reporting an attempt on Acevedo's life did not require a mistrial, especially in view of the trial court's instructions to the jury that the article, which did not mention anyone involved in the present case except Acevedo, had nothing to do with defendants. The court acted within its discretion when it provided various readbacks of testimony requested by the jury but directed the jury to rethink its request for a readback which would have required approximately two days. The trial judge was not disqualified to sentence defendant because, after the jury was discharged, he conferred informally with the jurors after the jury was discharged, with the knowledge of defendant's counsel and without any objection.
The judgment of the trial court is vacated insofar as it merged the substantive counts of the indictment into the conspiracy count, and the case is remanded for resentencing of the defendant in accordance with this opinion. The judgment of conviction is affirmed in all other respects.
NOTES
[1] See also State v. Federico, 103 N.J. 169 (1986). The statute which was at issue in that case provided that kidnapping was "a crime of the first degree and upon conviction therefor a person may ... be sentenced to ... between 15 and 30 years. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree." The court held that to convict the defendant of a first degree offense, the State had the burden of proving beyond a reasonable doubt that the victim was not released unharmed and in a safe place prior to apprehension. The court noted that the Appellate Division had refrained from deciding whether the defendant's failure to release the victim unharmed had to be alleged in the indictment, and, because there had been no cross-petition for certification which would have been required to raise the issue before the Supreme Court, it, too, left the question unanswered. 198 N.J. Super. 120 at 129-130; 103 N.J. at 173.