276 N.J. Super. 296 (1994)
647 A.2d 1351
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL LOPEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 13, 1994.
Decided October 6, 1994.
*297 Before Judges PRESSLER, LANDAU and CONLEY.
Susan L. Reisner, Acting Public Defender, attorney for appellant (Beth M. Jaffe, Designated Counsel, on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Following a jury trial, defendant was convicted of first degree armed robbery, contrary to N.J.S.A. 2C:15-1 (count one), and second degree kidnapping, contrary to N.J.S.A. 2C:13-1b (a lesser-included offense under count two). He was acquitted of third degree unlawful possession of a machine gun (count three) and possession of a machine gun for an unlawful purpose (count four). A custodial term of twenty years with a seven-year parole disqualifier was imposed on count one. A concurrent ten-year term was imposed on count two. In addition, a total $60 Violent Crimes Compensation Board penalty was also imposed.
The convictions arose from the robbery of Dicson Pena, a taxicab driver, on October 28, 1990. According to his testimony, presented to both the grand jury and the petit jury, Pena picked up four passengers on that date at about 10:00 p.m. at 52nd Street and Palisades Avenue in West New York, New Jersey. Defendant was one of the four, along with another male and two *298 females. The other male got in the front seat next to Pena and the other three were in the back seat; defendant was directly behind Pena. Pena drove them thirteen blocks to 39th Street and New York Avenue when the other male initially pulled out a knife, which he gave to one of the women in the back seat, and then pulled out a handgun. While being threatened with both weapons, Pena testified that he was robbed of his watch, jewelry and money. In addition to the knife and handgun, he also claimed that, at one point, he saw what looked like a machine gun in defendant's hand. After the four robbed Pena, defendant got into the driver's seat and drove the cab through the Lincoln Tunnel into New York City where Pena was pushed out of the cab at 165th Street and Broadway. The cab was abandoned a block away. Defendant was apprehended a few days later when Pena spotted him in West New York and alerted the police.
Defendant chose not to testify, but his girlfriend, Zulma Morales, one of the females involved, did. She admitted that Pena was robbed and that the cab was commandeered for a short time, but she was adamant that the only weapons involved were two six-inch butter knives. She also claimed that neither she nor defendant ever possessed the knives or any other weapons, that neither defendant nor she had any intent or knowledge of any plan to rob Pena when they got into the cab and that defendant had been forced by the other male to drive the cab.
Pursuant to special interrogatories submitted to the jury on count one, the jury found defendant guilty of robbery, that he was not armed with a machine gun, was hung on whether he was armed with a handgun, but did find he was armed with a knife during the course of the robbery. Thus, the conviction of the first degree robbery was based upon a jury finding that the weapon involved was a knife. It goes without saying the jury rejected Pena's observations of a machine gun and could not agree on the handgun testimony.
Because it is critical to the only issue of substance that defendant has raised, we set forth in some detail the circumstances *299 surrounding and leading up to the submission to the jury of the weapons special interrogatories. Although we have not been presented with the actual grand jury transcript, it is not disputed that the substance of Pena's trial testimony was presented to the grand jury, including his testimony as to the multiple weapons involved. The actual language of the armed robbery count, as returned by the grand jury, however, was that on October 28, 1990 defendant:
in the course of committing a theft, did threaten immediate bodily injury to Dicson Pena, and/or did purposely put Dicson Pena in fear of immediate bodily injury, while armed with and/or threatening the immediate use of a deadly weapon, to wit: a machine gun, contrary to the provisions of N.J.S.A. 2C:15-1....
Count one, then, charges that defendant committed a robbery with a deadly weapon but specifies as the deadly weapon only the machine gun. The third and fourth counts, charging the weapons offenses and of which defendant was acquitted, also refer solely to the machine gun. We pause here, however, to note that defendant has not suggested or argued, that the grand jury was specifically requested, but declined, to return an armed robbery indictment based on the other weapons. See State v. LeFurge, 101 N.J. 404, 424, n. 18, 502 A.2d 35 (1986) ("[o]bviously, a trial court would not ... charge [unindicted] conspiracy in a case in which the grand jury was asked to indict for conspiracy but declined to do so.").
During jury selection, the prosecutor moved, pursuant to R. 3:7-4, to "correct" or "reform" the description of weapons contained in count one to read "a machine gun and/or a pistol and/or a knife." In doing so, the prosecutor pointed out:
That information is contained in the police reports as reported to the police by the complaining witness in this matter and those weapons are referred to specifically within the grand jury testimony that was given on January 2nd of this year by the victim in this matter, and I have the grand jury minutes available for the Court to review that.
........
I would think that based on a review, Judge, of the grand jury minutes and the parameters of the rule, that the State's motion is merely to round out the description of the crime that is alleged, more specifically the description of the *300 weapons used in the crime rather than alleging any new crime to have been committed because he is, in fact, indicted for the highest version....
Defense counsel objected. He said:
the problem that I have with that in the indictment is that it's, if we had had that originally in the indictment, to comport, then I wouldn't have a problem with that because I think that then we could  in terms of our defense that we could probably be able to look at those other aspects, and also as far as my concern is, the issue of accomplice liability would then come up because to me would have a proper basis for which to offer a plea, a counter-plea, counter-plea offer that would encompass a response from my client that would deal with the accomplice area.
As far as we can discern from the record, however, plea negotiations, which appear to have been on-going during this time frame, were not in any way impeded by the technical wording of the indictment, but rather by the State's unwillingness to consider a plea on other than a Graves Act offense. Given the State's early provision of discovery including the police reports referring to a knife and the provision of the grand jury minutes, it is evident that the State's position on plea bargaining was unaffected by the wording of the indictment.
In any event, the trial judge denied the prosecutor's request to amend the indictment. The trial judge specifically stated, however, that she would not restrict the evidence concerning the various weapons involved "if the testimony bears out any lesser included or alternative weapons ... will so direct the jury with respect to lesser included at the time of the jury charge." The trial judge specifically stated that if all three weapons were referred to in the evidence, the jury would be asked to return a verdict on armed robbery as to each separate weapon. Defense counsel raised no specific objection as to that procedure at that time and requested no limitations on the State's offer of evidence of defendant's use of a weapon other than a machine gun.
Nor did defendant object during trial to the testimony as to the pistol and knife. Moreover, not only did he extensively cross-examine as to that, but he also presented direct evidence of the existence of knives through his witness, Zulma Morales. And when, after presentation of the evidence and during discussion of the charge, the trial judge inquired as to whether the jury should *301 be requested to return a verdict, not only as to the machine gun but the pistol and knife as well, defense counsel again did not object. Indeed, when the trial judge asked "Do you want to put on the verdict sheet then: Was a handgun used? Was a knife used? Was an automatic weapon used?", he replied: "I think you would have to; otherwise, I don't see how the Court would be guided." Later, in agreeing to the prosecutor's request for a charge on second degree robbery, defense counsel stated: "I would be of a mind to say that probably there would be a position for both, for there being armed robbery (a) with a knife, (b) with a pistol or gun, and, and/or did a robbery occur, ...." The jury determined defendant was guilty of first degree robbery while armed with a knife.
On appeal, defendant raises the following claims:
POINT I: THE COURT'S ALLOWING THE JURY TO DELIBERATE ON AN OFFENSE NOT CONTAINED IN THE INDICTMENT WAS ERROR.
POINT II: THE QUESTIONING OF DEFENSE WITNESSES BY THE COURT DEPRIVED THE DEFENDANT OF A FAIR TRIAL. (Not Raised Below).
POINT III: THE JURY VIEWING OF THE DEFENDANT IN JAIL CLOTHES WAS PREJUDICIAL AND DEPRIVED HIM OF A FAIR TRIAL. (Not Raised Below).
POINT IV: THE DEFENDANT'S PRIOR CONVICTION SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.
POINT V: THE INCIDENTS INVOLVING THE JURORS OUTSIDE THE COURTROOM DENIED THE DEFENDANT A FAIR TRIAL. (Not Raised Below).
POINT VI: THE SENTENCE IMPOSED UPON THE DEFENDANT WAS EXCESSIVE AND SHOULD BE REDUCED. (Not Raised Below).
We have carefully considered all of these contentions and find points II through VI to be without merit. R. 2:11-3(e)(2). As to defendant's point I, we disagree that the conviction of first degree robbery must be reversed because the indictment only included reference to a machine gun.
Article I, par. 8 of the New Jersey Constitution provides that, except in certain cases not relevant here, "[n]o person shall be held to answer for a criminal offense, unless on the presentment *302 or indictment of a grand jury." Article I, par. 10, similarly, provides that "[i]n all criminal proceedings the accused shall have the right ... to be informed of the nature and cause of the accusation." Thus, as has repeatedly been recognized, the purposes of an indictment are to provide adequate notice so that the accused can prepare a defense and to be sufficiently specific for the accused to avoid a subsequent prosecution for the same offenses. E.g. State v. LeFurge, 101 N.J. 404, 415, 502 A.2d 35 (1986); State v. La Fera, 35 N.J. 75, 81, 171 A.2d 311 (1961). Defendant does not contend that either of these constitutional safeguards are implicated here.
There is, however, another, perhaps more fundamental, safeguard which defendant claims was violated by the submission of the armed robbery charge to the jury on the basis of the pistol and knife. That is the constitutional right "that no man shall be brought to trial for crime unless a grand jury shall first find sufficient cause for the charge." Id. Hence, the indictment must allege all the essential elements of the crime to avoid prosecution for an offense the grand jury did not find. Id. E.g. State v. LeFurge, supra, 101 N.J. at 418, 502 A.2d 35. Thus, and generally speaking though not without exceptions, a defendant cannot be convicted of an offense not charged. See for example, State v. Neal, 229 N.J. Super. 28, 550 A.2d 998 (App.Div. 1988) (a defendant indicted for robbery of a named victim may not be convicted of a general conspiracy to commit armed robbery of different victims) and State v. Passafiume, 184 N.J. Super. 447, 446 A.2d 549 (App. Div.) certif. denied, 91 N.J. 280, 450 A.2d 589 (1982) (a defendant indicted for uttering a forged check cannot be convicted of passing a bad check). And see State v. Grothmann, 13 N.J. 90, 95, 98 A.2d 291 (1953) ("[i]t is fundamental in the constitutional limitation that an indictment is not amendable by the court to charge an offense not found by the grand jury, either by a substitution of offense or to supply substantive omissions.").
These general principles, however, are not engraved in stone. State v. LeFurge, supra, 101 N.J. at 419, 502 A.2d 35; State v. *303 Talley, 94 N.J. 385, 392, 466 A.2d 78 (1983). "An indictment is merely a pleading device and never an end in itself." State v. LeFurge, supra, 101 N.J. at 419, 502 A.2d 35. Therefore, while an "indictment must be sufficiently specific `to preclude the substitution by a trial judge of an offense which the grand jury did not in fact consider or charge,'" id. at 415, 502 A.2d 35 (quoting State v. Boratto, 80 N.J. 506, 519, 404 A.2d 604 (1979)), the interpretation of an indictment in charging a jury "cannot be permitted to deteriorate into a mere game ... on the basis of some arcane notion of pleading." State v. Talley, supra, 94 N.J. at 394, 466 A.2d 78. And see State v. Boratto, supra, 80 N.J. at 520, 404 A.2d 604; State v. LaFera, supra, 35 N.J. at 89, 92-93, 171 A.2d 311.
Applying these principles, our courts have refused to construe the language of an indictment rigidly in the absence of any indication that a case was presented to a trial jury on a different basis than to the grand jury or a showing of other prejudice to the defendant. Thus, in State v. Dixon, 125 N.J. 223, 257-58, 593 A.2d 266 (1991), the Court concluded that the trial court did not commit reversible error in submitting a charge of aggravated criminal sexual contact based on the presence of a deadly weapon even though the indictment charged only the commission of aggravated criminal sexual contact based on the commission of a robbery:
Criminal sexual contact is elevated for grading and sentencing if it is done during the commission of another crime or involves the use of a weapon. In this case the indictment charged defendant with aggravated sexual contact based on the commission of a robbery.
At the close of the State's case, defendant moved for an acquittal on all counts. The court questioned the factual basis for the aggravated criminal sexual contact in that the language of the indictment failed to specify whether it occurred during the course of the robbery or while defendant was armed. The court consulted with counsel, reviewed pretrial proceedings, and noted that the prosecutor's pretrial representation to defendant was that the sexual contact had been committed during "either the course of the commission of the robbery or the possession of the weapon." The state argues that, having found no prejudice to defendant from lack of notice, the court properly concluded that there was sufficient evidence to support an aggravated criminal sexual contact charged based on either the robbery or the fact that defendant was armed.

*304 We agree with the State's position on that issue. As a general rule a criminal defendant may not be convicted for an offense not charged in the indictment, but a trial court may instruct a jury on lesser-included offenses of the crime charged in the indictment on the prosecutor's request when there is a rational basis of the charge and when the defendant consents.... Because the indictment fairly apprised defendant of the charge (after all, the offense is the sexual contact, the other factors grade it) and the pretrial discovery revealed that the State's theory was based on either the possession of the weapon or the robbery, giving sufficient notice to defendant to defend against the charge, there is no constitutional infirmity....
[125 N.J. at 223, 593 A.2d 266. Citations omitted].
Similarly, in State v. Gray, 206 N.J. Super. 517, 521-22, 503 A.2d 327 (App.Div. 1985), certif. den. 103 N.J. 463, 511 A.2d 646 (1986), we concluded that the trial court did not commit reversible error in charging the jury that defendant could be found guilty of sexual contact if he had intentionally touched the victim's "intimate parts," including her "inner thigh," even though the indictment only referred to "intentionally touching the vagina and genital area" of the victim:
We are satisfied, under the totality of the circumstances, that defendant's conviction should not be reversed under the plain error doctrine. We stress that there was no objection to inclusion of reference to the "inner thighs" in the charge. Nor did the defendant assert lack of notice or specific prejudice by consideration of that subject. Moreover, the first count of the indictment referred to the appropriate subsection of the Code of Criminal Justice, N.J.S.A. 2C:14-2b, which makes it a crime of sexual assault if the actor, at least four years older than the victim, commits an act of sexual contact with a victim less than 13 years of age. We are convinced that, under the circumstances where the indictment referred to specific "intimate parts" (the "vagina and genital area") and the proofs included another "intimate part" within the same zone of privacy, there is no lack of indictment or notice warranting reversal of a new trial.
[206 N.J. Super. at 522, 503 A.2d 327].
Accord State v. J.S., 222 N.J. Super. 247, 536 A.2d 769 (App.Div.), certif. denied, 111 N.J. 588-59, 546 A.2d 513, 514 (1988).
The circumstances of this case are similar to those in Gray. Although initially objecting to an amendment of the indictment, defendant did not object to the court instructing the jury with respect to the separate weapons referred to and did not object to the verdict sheet. And defendant cannot claim that he lacked fair notice that the State was prosecuting on all three weapons. *305 Moreover, like the additional "intimate parts" revealed by the proofs in Gray, the proof here of the knife and pistol used during the same episode with the machine gun simply "included another [deadly weapon] within the same [element of the offense]." State v. Gray, supra, 206 N.J. Super. at 223, 503 A.2d 327.
Simply stated, where a grand jury indicts a defendant for armed robbery, the kind of deadly weapon is not an essential element of the offense and thus need not be particularized in the indictment, although the State's version must be disclosed in discovery, as was done here. As defined in the Code of Criminal Justice, "element of an offense" means:
(1) Such conduct or (2) such attendant circumstances or (3) such a result of conduct as
(a) Is included in the description of the forbidden conduct in the definition of the offense;
(b) Establishes the required kind of culpability;
(c) Negatives an excuse or justification for such conduct;
(d) Negatives a defense under the statute of limitations; or
(e) Establishes jurisdiction or venue....
[N.J.S.A. 2C:1-14h].
Subsections (b) through (e) clearly are not applicable here. Whether the particular weapon(s) alleged to be involved in an armed robbery are encompassed within the Code's definition of "element of an offense" must focus upon subsection (a).
The offense of first degree robbery is codified in N.J.S.A. 2C:15-1 which provides:
a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another; or
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill *306 anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

[Emphasis added].
The Code, then, makes robbery a crime of the second degree except where there are present certain aggravating circumstances that elevate the offense to a crime of the first degree. Critical to the offense charged here, one such circumstance is that the defendant, in the course of committing the robbery, "is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1(a), (b); State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982). It is the use of a deadly weapon that elevates the crime and enhances the degree of the offense. Id. at 231, 445 A.2d 399. It is that aggravating or enhancing factor which must be included in an indictment for robbery if a defendant is to be convicted of a first degree robbery. State v. Catlow, 206 N.J. Super. 186, 194-95, 502 A.2d 48 (App.Div. 1985), certif. denied, 103 N.J. 465-66, 511 A.2d 648 (1986).
In Catlow the indictment charged that defendant "did threaten bodily injury upon [victim], in the course of committing a theft, contrary to the provisions of N.J.S.A. 2C:15-1." Nonetheless, the trial judge charged the jury on first degree robbery during the incident. We reversed, observing "the degree of a crime to be an essential element of the grand jury function." We rejected the State's contention that the distinction between first and second degree robbery was "merely one of grading" as "unrealistic in light of the importance of such distinction.... This distinction may be of far greater consequences to an accused than the obtaining of an acquittal on a crime of a lesser degree." 206 N.J. Super. at 195, 502 A.2d 48. And see State v. Rodriguez, 234 N.J. Super. 298, 304-05, 560 A.2d 1233 (App.Div.), certif. denied, 117 N.J. 656, 569 A.2d 1350-51 (1989); State v. D'Amato, 218 N.J. Super. 595, 604-05, 528 A.2d 928 (App.Div. 1987), certif. denied, 110 N.J. 170, 540 A.2d 169 (1988); State v. Provet, 133 N.J. Super. 432, 439-40, 337 A.2d 374 (App.Div.), certif. denied, 68 N.J. 174, 343 A.2d 462 (1975).
*307 Here, the indictment clearly charged defendant with the use of a deadly weapon. Whether the weapon was a machine gun, pistol or knife may have triggered application of various Graves Act provisions, but those sentencing provisions are not part of the jury's deliberations on the offense charged, State v. Stewart, 96 N.J. 596, 606, 477 A.2d 300 (1984), and are not required to be included in an indictment. State v. Rodriguez, supra, 234 N.J. Super. at 305-06, 560 A.2d 1233. Cf. State v. Torres, 236 N.J. Super. 6, 12, 563 A.2d 1141 (App.Div. 1989), certif. denied, 122 N.J. 153, 584 A.2d 222 (1990). It is the existence of a deadly weapon, whatever form it might take, which is the enhancing factor that must be charged in the indictment.
Thus, the indictment here could have been amended pursuant to R. 3:7-4[1] to add the pistol and knife to the description of the deadly weapon. See State v. J.S., supra, 222 N.J. Super. at 258, 536 A.2d 769 (in indictment charging sexual contact contrary to N.J.S.A. 2C:14-1(d), specification of particular intimate parts touched was not an essential element of the offense and amendment pursuant to R. 3:7-4 to substitute "vagina" for "breast and inner thigh" did not violate the proscription against charging another or different offense but rather simply corrected the description of the crime intended to be charged). Compare State v. Koch, 161 N.J. Super. 63, 390 A.2d 1192 (App.Div. 1978). The amendment requested by the state would have done no more than add to the description of the specific weapons in order to conform to the evidence presented to the grand jury. To state it a little differently, we do not consider submission of the pistol and knife to the jury as permitting defendant to be found guilty of separate, *308 uncharged harms, but rather as permitting consideration of several versions "of the means through which defendant brought about the same harm." Compare State v. Smith, 136 N.J. 245, 252, 642 A.2d 978 (1994) and State v. Talley, supra, 94 N.J. at 385, 466 A.2d 78.
And critically, defendant claims no discernable prejudice. While he initially objected to an amendment of the indictment, defendant not only acquiesced in but, in our view encouraged submission to the jury of the alternatives to the machine gun. The rationale for doing so is not difficult to discern. As counsel recognized during colloquy on the charge, the possibility of a second degree robbery verdict was slim, but that of a verdict as to the pistol or knife was not. Obviously a verdict on armed robbery with a pistol or a knife would be preferable to an armed robbery with the machine gun, because armed robbery with a machine gun carries an enhanced-Graves Act sentence, N.J.S.A. 2C:43-6g. Armed robbery with a pistol carries a standard Graves Act sentence, N.J.S.A. 2C:43-6c, and armed robbery with a knife is not subject to that Act.
Our admonitions in State v. Battle, 256 N.J. Super. 268, 282-283, 606 A.2d 1119 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992), are pertinent. There, the offense of resisting arrest, of which defendant was convicted, was not charged in the indictment. We concluded that defendant had waived his right to an indictment of that offense under circumstances not unlike those that occurred here. We noted:
The strategic benefit to defendant of the submission of this charge to the jury is self-evident. Defendant was indicted for second degree escape, for which he was subject to a five to ten year term of imprisonment, N.J.S.A. 2C:29-5d, while the form of resisting arrest submitted to the jury is a fourth degree offense, for which he could be sentenced to a maximum term of eighteen months, N.J.S.A. 2C:29-2a. Furthermore, defendant, testifying on his own behalf, admitted that he had attempted to escape police detention, disagreeing with the officer only as to whether this conduct occurred before or after he was placed under arrest. While the jury could have acquitted defendant if it believed his version of the incident and escape was the only offense charged, defense counsel could reasonably have thought that the jury would be reluctant to acquit defendant outright and that he *309 would have a better chance of being acquitted of escape if the jury were given the opportunity to convict him of a lesser offense.
In addition, defendant clearly had timely and adequate notice of the court's intent to submit resisting arrest to the jury as a lesser offense of escape. Indeed, defense counsel participated in this decision in an off-the-record charge conference and then expressed his consent to the charge on the record. Furthermore, the charge conference occurred in the middle of defendant's testimony, during which he in effect denied his guilt of escape and admitted his guilt of resisting arrest. Thus, defendant not only had timely notice that this lesser offense would be submitted to the jury but it may be reasonably inferred that it was submitted upon the request of his attorney for the strategic reasons previously discussed.
[256 N.J. Super. at 282, 606 A.2d 1119].
Under these circumstances, we observed: "A defendant cannot request the trial court to take a certain course of action, take his chance on the outcome of the trial and `then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.'" 256 N.J. Super. at 282, 606 A.2d 1119, quoting State v. Ramseur, 106 N.J. 123, 282, 524 A.2d 188 (1987). Noting that by his acquittal of the charge of escape defendant had obtained a substantial benefit from the submission to the jury of the charge of resisting arrest, we concluded that "it would pervert the constitutional protection afforded an accused to permit defendant now to secure a reversal of his conviction for resisting arrest after he has reaped the benefit of its submission to the jury at trial." Id. at 283, 606 A.2d 1119. See State v. Ciuffreda, 127 N.J. 73, 79, 602 A.2d 267 (1992).
So too here. Defendant agreed to and obtained the benefit of the submission of the knife to the jury as an alternative to the Graves Act weapons on the armed robbery charge. Having done so, we do not think he can now claim error in the omission of that weapon from the indictment. State v. Harper, 128 N.J. Super. 270, 277, 319 A.2d 771 (App.Div.), certif. denied, 65 N.J. 574, 325 A.2d 708 (1974).
Affirmed.
NOTES
[1] R. 3:7-4 provides:

The court may amend the indictment or accusation to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his defense on the merits. Such amendment may be made on such terms as to postponing the trial, to be had before the same or another jury, as the interest of justice requires.