**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4872-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ADAM J. McCARRAHER a/k/a
ADAM J. McCARRHER,

     Defendant-Appellant.

_____

Submitted October 3, 2019 – Decided November 13, 2019

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-11-0929.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard W. Bailey, Designated Counsel, on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen Anderson Pickering, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Adam J. McCarraher was convicted of conspiracy to possess a controlled dangerous substance (CDS), N.J.S.A. 2C:5-2(a) and 2C:35-10(a)(1).  On May 18, 2018, defendant was sentenced to five years probation, contingent upon his successful completion of drug court. The Law Division judge before trial granted the State's application to amend the indictment to specify the drug—buprenorphine, also known as suboxone. During the trial, the State qualified its chief witness, Courtney Perry, a twelve-year veteran Cape May County Sheriff's Department detective, as an expert regarding street usage related to suboxone terms, such as "sub doctor," and "subs."  Defendant appeals, and we affirm.

The conspiracy was uncovered when Perry, whose responsibilities included monitoring inmate phone calls at the Cape May County Correctional Facility, began reviewing those made by defendant's co-defendant, Eric Konczyk, then also an inmate.  Jail authorities investigated Konczyk because he was mailed an envelope containing strips of suboxone taped inside.  When the detective expanded her search to other residents in Konczyk's unit, she listened to recorded calls placed by defendant.  These calls, referring to purchases of suboxone, were made to a phone number belonging to a second co-defendant, Jason Miller.  At trial, the judge charged the jury regarding consideration of

A-4872-17T1

expert testimony, both when Perry was qualified and as part of the general closing instruction. See Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 11, 2003).

The jury heard the four recordings of defendant's calls. In the first, defendant and Miller discussed putting money on Konczyk's "books," which the officer explained was usually a reference to the jail's commissary. Perry checked commissary records and confirmed Miller put forty dollars in Konczyk's books as requested.

In the second, defendant asked Miller what was going on with the "other thing" and again asked for "sixty" to be placed in Konczyk's books. This time, however, Perry could not find sixty dollars in either Konczyk's or defendant's accounts, and concluded that the term "books" referred to suboxone strips, and interpreted "sixty" to mean six strips.

In the third conversation, which took place three days before the envelope was seized, defendant and Miller again discussed placing "money on the books" in the amount of "forty." Perry explained that mail normally takes about three days to reach an inmate. Correctional facility staff seized the envelope containing exactly four suboxone strips three days after the phone call. Forty dollars was not placed in either Konczyk's or defendant's account.

3

In the fourth recording, defendant spoke to Miller about a friend seeing a "sub doctor" and getting more "subs." Perry testified a "sub doctor" was a physician who would prescribe the drug, and that "subs" referred to the drug itself.

When Perry described her qualifications, she could not remember which training courses or schools she had attended—only that in order to qualify for her position, she had to enroll in several. She also said she had worked at the correctional center as an investigator for seven years.

The State also called Konczyk, who had pled guilty in July 2016 to conspiracy to possess CDS with defendant. While on the stand, Konczyk initially denied the conspiracy, but his recollection was refreshed when he was reminded of his guilty plea. Konczyk testified that while housed in defendant's unit, defendant told him a letter would be arriving that day addressed to Konczyk that was really for defendant. Konczyk claimed he never received the envelope, and denied knowing its contents. He did not know Miller or the addressee on the envelope containing the suboxone strips. Contrary to his earlier plea, Konczyk denied ever entering into an agreement with defendant to receive drugs by mail on his behalf. Konczyk alleged that he took the plea agreement only

because he wanted to be released in time to attend his son's championship basketball game.

During the pretrial motion, defendant argued, as he does on appeal, that because the State did not reference the actual drug in the indictment, it was fatally defective and could not be cured by an amendment. He contended that Rule 3:7-4, which authorized the amendment of indictments, only permits it so long as a result of the indictment does not charge different offenses or otherwise prejudice the defendant. He posited that an amendment naming the drug exceeded the scope of the rule.

On appeal, defendant raises the following issues for our consideration:

> POINT I: THE COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED THE STATE TO INTRODUCE TERMINOLOGY TESTIMONY FROM A POLICE OFFICER WHO WAS NOT QUALIFIED AS AN EXPERT (NOT RAISED BELOW).
>
> POINT II: THE COURT ERRED IN ALLOWING THE PROSECUTOR TO AMEND COUNT ONE OF THE INDICTMENT TO SPECIFY THE CONTROLLED DANGEROUS SUBSTANCE AS BUPRENORPHINE.

I.

A.

Appellate review of a trial court's evidentiary determinations is limited to examining the decisions for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). In doing so, the reviewing court may not "create anew the record on which the trial court's admissibility determination was based." Ibid. Generally, evidentiary determinations are given considerable latitude and will not be disturbed unless the decision was so "wide of the mark that a manifest denial of justice resulted." State v. Kuropchak, 221 N.J. 368, 385-86 (2015) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

If a party fails to object to a court's determination at trial, we will disregard the error "unless it is of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2; see also R. 1:7-2. In such a case, the appellate court may notice plain error in the interests of justice. R. 2:10-2.

## B.

We first address defendant's contention that it was plain error for the judge to allow testimony from the detective regarding the coded language employed during the phone calls between defendant and Miller. The basis for the argument is that the detective was never properly qualified. Defense counsel did not object to either the detective's qualifications or her testimony.

A-4872-17T1

Although some slang terms referring to drugs may not require expert translation, other "drug slang or code words remain beyond the average juror's understanding." State v. Hyman, 451 N.J. Super. 429, 446 (App. Div. 2017). "In the exercise of its gatekeeping function, a trial court must determine that the opinion testimony will likely assist the jury in understanding drug culture vernacular." Id. at 447.

N.J.R.E. 702 provides "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." In order for expert testimony to be admissible under N.J.R.E. 702:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [State v. Torres, 183 N.J. 554, 567-68 (2005) (quoting State v. Berry, 140 N.J. 280, 290 (1995)).]

Of those three prongs, defendant attacks only the third, arguing Perry lacked sufficient expertise to interpret drug slang, and should not have been qualified. The requirement that a witness have sufficient expertise means

7

qualification by either "knowledge, skill, experience, training, or education." Id. at 572. An expert may be qualified on experience alone, even when it is limited. Ibid.; see State v. Moore, 122 N.J. 420, 460 (1991) (holding a police detective with two years of experience as a crime scene investigator but minimal training in blood-spatter analysis still qualified as an expert). Ultimately, "[t]he trial court has discretion in determining the sufficiency of the expert's qualifications 'and [its decision] will be reviewed only for manifest error and injustice.'" Torres, 183 N.J. at 572 (quoting State v. Ravenell, 43 N.J. 171, 182 (1964)).

The detective said over the years she attended training programs and correctional officer schools, as well as having years of experience monitoring inmate telephone calls. She had minimal recall of the schools or courses she attended, however. Perry attributed her knowledge of current drug terminology to the combination of her education, training, and service as a corrections officer.

Reviewing the admission of Perry's testimony under the plain error doctrine, we are satisfied it was not an exercise of discretion "clearly capable of producing an unjust result." Id. at 564. That she may have not remembered which schools she attended in what years did not refute her statement she attended them.

8

Without Perry's testimony, the jury could not have understood the language, which included terms such as "subs," "sub doctor," and "forty" or "sixty" being used outside their ordinary meanings. Defendant's claim of error springs only from the detective's failure to remember the specific training she engaged in. Defendant does not identify anything in the record which calls her credentials into question to testify on this limited topic.

N.J.R.E. 702 allows for a number of sources for an expert's knowledge— even in some instances, mere experience. Perry was specially assigned for years to conduct criminal investigations in the correctional facility because of her background, and she had the benefit of years of monitoring inmate phone calls for safety and security reasons, keeping her knowledge of the vernacular fresh. The substance of her testimony was not particularly complex or esoteric. The prosecutor adequately established her qualifications, and the judge's admission of her testimony was therefore not an abuse of discretion. No plain error occurred.

## II.

Defendant also contends that the court erred by allowing the State to amend the indictment to name suboxone or buprenorphine as the CDS defendant conspired to possess. Pursuant to Rule 3:7-4, indictments may be amended to

correct errors, so long as the amendment does not charge a different offense or otherwise prejudice a defendant.

Clearly, the only change accomplished by the amendment was the identification of the drug in question. The amendment did not go to the "core of the offense" or otherwise materially change the indictment. See State v. Dorn, 233 N.J. 81, 94 (2018). The essential facts were set forth in the indictment before the amendment. Nothing about the omission of the type of drug would have misled defendant substantially or misinformed him as to the crime charged.

This case is analogous to State v. Lopez, 276 N.J. Super. 296 (App. Div. 1994). Lopez was convicted of first-degree robbery by the use of a knife, but indicted for first-degree robbery by the use of a machine gun. Id. at 298-99. In that case, we relied on an earlier Supreme Court opinion stating that "[a]n indictment is merely a pleading device and never an end in itself." Id. at 303 (citing State v. LeFurge, 101 N.J. 404, 419 (1986)). In Lopez, the trial judge denied the motion to amend, but allowed the State to proffer proof of the defendant's alleged use of three weapons: the machine gun, the knife, and a handgun. 276 N.J. at 300. We said the essential aspect of the charge was the State's claim a deadly weapon was used—elevating the offense to armed robbery. Id. at 307. The important point was not the type of weapon, but "the

existence of a deadly weapon, whatever form it might take . . . ." Ibid.

Therefore, the defendant was not prejudiced by the jury's consideration of weapons different from those named in the indictment.

In State v. J.S., 222 N.J. Super. 247 (App. Div. 1988), we did not reverse a conviction where the trial judge amended an indictment to conform to the evidence to name the intimate body parts defendant allegedly touched. Id. at 250-51. Because "specification of the particular intimate parts touched is not an essential element of the crime," and the limit of the rule was not exceeded— defendant was not charged with a new or different offense. Id. at 258. J.S. knew the essential elements of the crime with which he was charged.

Like the defendants in Lopez and J.S., this defendant was clearly placed on notice of the offense. He knew he was being prosecuted for a conspiracy to possess a CDS, thus the amendment to name the drug was not prejudicial. Adding the name of the particular CDS did not charge a new or different offense, or otherwise prejudice him. See Dorn, 233 N.J. at 93.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4872-17T1